## Case No. 8,879.

### In re McLEAN et al.

[15 N. B. R. (1877) 333.] [1]

District Court, D. Delaware.

BANKRUPTCY— PARTNERSHIP — JOINT ESTATE—INDIVIDUAL ESTATE—CREDITORS—CREDITOR PARTNER.

1. The joint estate of a partnership is first liable for the partnership debts, and the separate estate of the partners for the separate debts of its individual members, and neither class has a right to go on the fund primarily belonging to the other, until the creditors having preference are fully satisfied.

[Cited in Re Lloyd, 22 Fed. 91.]

2. The debt of a firm which has advanced money to an individual member beyond his share of the capital, is a separate debt of the firm as against the partner receiving the same, and the assignee of the firm may prove the debt in bankruptcy.

3. But while such claim may be proven by the assignee of the firm against the separate debtor partner, he cannot be permitted to come upon the separate estate of the debtor copartner for the use of the creditor copartner, until all the joint creditors are fully satisfied.

[Cited in Re Hamilton, 1 Fed. 811.]

4. A bankrupt creditor partner has no such equitable claim to his share in the separate estate of his debtor copartner, as that he can absolutely transmit it to his assignee in trust for himself, until all the firm creditors are paid.

5. His interest is altogether contingent on the sufficiency of the joint funds to pay the joint creditors; until these are fully satisfied there can be no right of enjoyment in the creditor bankrupt partner.

6. A decision which will satisfy all equities, and give consistent efficacy to all parts of the bankrupt act [of 1867 (14 Stat. 517)], is one which

---

[1] [Reprinted by permission.]

will permit the proof of the claim while it at the same time restrains the assignee from coming on the separate estate of the debtor bankrupt, until all the joint debts of the firm are fully satisfied.

William Canby was the assignee of John McLean & Son, and also of John McLean and John P. McLean, the individual members of that firm. John McLean & Son were bankers in the city of Wilmington, Delaware. Some twenty thousand dollars more than John P. McLean's share in the capital stock amounted to, was, during the course of business of the firm, advanced by John McLean (the father), to the firm for firm uses and purposes. Father and son shared equally in the profits of the concern. The assignee filed a petition to be permitted to take from the separate estate of John P. McLean, funds with which to pay this claim pari passu with the separate creditors of John P. McLean, and to distribute the same for the benefit of the joint creditors. The separate estate of John P. McLean was ample to pay all his separate debts, excluding this one. The joint estate showed no prospect of paying forty per centum of the amount of the joint debts.

BRADFORD, District Judge. On the 12th of June last, a rule to show cause why the prayer of the petitioner, William Canby, assignee in bankruptcy of John McLean and John P. McLean, trading as John McLean & Son, to obtain authority from this court to take from the separate estate of John P. McLean, funds, and apply the same to the payment of joint creditors pari passu with the separate creditors, was granted, and made returnable on the 26th day of the same month. William Bush, administrator of Maria T. Smith's estate, and as such a creditor of John P. McLean individually, opposed the granting of the petition, and was represented by the Hon. S. F. Bayard, as his counsel. The petitioner was represented by George H. Bates and Edward G. Bradford, Jr. The questions involved were argued at great length with much ingenuity and elaboration; and the confidence expressed by the counsel for the petitioner in the equity of the application, and the careful preparation they have given to the case, have induced me to go at greater length into its examination than I otherwise should have done. The direct object and purpose of the petitioner, for which he seeks the sanction of this court, stripped of all unnecessary verbiage, is to take money from a fund which is appropriated by law to the payment of one class of creditors to the exclusion of the other class until the first is fully satisfied, and apply the same pari passu between the separate and firm creditors in such manner that the separate fund is rendered insufficient to pay the separate creditors. Whether this may be done is the precise question to be answered, and all argument having a tendency to show what ought

to be the law on this subject, arising out of the supposed equal equity between the separate creditors of the firm and the joint creditors, worked out through the medium of John McLean's equitable claim against his bankrupt partner, must give way to the actual state of the law as now existing on the subject of the distribution of the estate of the bankrupts, under the bankrupt act now in force.

The first question to be considered is, what is the law on this subject to be administered by a court of equity outside of the provisions of the bankrupt law? And the second is, has that law been changed by the bankrupt acts? It is the undoubted law of this country, decided and sanctioned by the supreme court of the United States, that the separate estate of insolvent partners must be first appropriated to the payment of the separate or individual creditors before it can be touched for the payment of the joint or partnership creditors. It is too late to enter on an examination of the reasons of the law and its equity. There was a short period during which joint creditors were permitted under a joint commission to prove against the separate estate, and come on that fund pari passu with the separate creditors. But that law was afterwards changed, and in England the result of the law is at last settled as above stated, with some exceptions not applicable to this case. Justice Story in his treatise on Partnership (section 376), says, "In the first place then, it is a general rule in bankruptcy, that the joint debts are primarily payable out of the joint effects, and are entitled to a preference over the separate debts of the bankrupt; and so, in the converse case, the separate debts are primarily payable out of the separate effects of the bankrupt, and possess a like preference, and the surplus only after satisfying such priorities can be reached by the other class of debts. For this purpose the joint estate and the separate of the bankrupt constitute separate funds to be administered separately by the assignees under the commission, whether it be a separate commission against one partner, or a joint commission against all the partners." Justice Story is not altogether satisfied with the certainty and definiteness of the equity underlying the decisions; but still states this to be the settled law of England, with three exceptions in which joint creditors shall be permitted to come on the separate property:—1. "Where the joint creditor is the petitioner for a separate commission against a bankrupt partner; 2. Where there is no joint estate and no living solvent partner; 3. Where there are no separate debts. In the first case the petitioning creditor may prove his debt, and share pari passu with the separate creditors in the separate estate. In the second case, all the joint creditors enjoy the same privilege; and in the third case, all the joint creditors share pari passu with each other." Mr. Gow, in his work on Partnership (pages

312–334), cited in note 1, Story, Partn. § 377, gives a statement of the decisions in England on this subject and arrives at the same result. Chancellor Kent, in Murray v. Murray, 5 Johns. Ch. 72, reviews all the law on this subject, stating Lord Hardwicke's rulings —Lord Thurlow's subsequent adverse decision by which he permitted the joint creditors to share pari passu with the separate creditors, and Lord Roselyn's restoration of the old rule, not to permit the joint creditors to share in the separate fund until the separate creditors were satisfied (with the exceptions as stated by Story, above quoted). The court of appeals of Maryland in McCulloh v. Dashiell, 1 Har. & G. 96–107, review the law on this subject, and after examining the authorities, say, "but this examination will satisfy us that amidst all the fluctuations of the rule the principles established in the first cases, occurring more than a century since, have been but for a short period materially encroached upon, and that now the leading principles of distribution, with some modifications, are what they were originally established to be;" and further on "we are thus disposed to adopt the ancient rule as more consonant to equity and justice, that the joint creditors can only look to the surplus after the payment of the separate debts; and on the other hand, that the separate creditors can only seek indemnification from the surplus of the joint fund after the satisfaction of the joint creditors." The Massachusetts cases in 9 and 10 Cush. and 10 and 13 Gray, cited by the counsel for the opposing creditor, all recognize this rule to be the established one in England; but ground their decisions on the language of their state insolvent act, which separates the funds and apportions them to different classes of creditors primarily, and then over to the other class after the preferred class has been satisfied. The statute of Massachusetts in this respect is, with the exception of the use of the word "company" for "partnership," identical with the national bankrupt act now in force, and these decisions will be hereafter referred to for another purpose.

This separation of the funds and their appropriation to the two classes of creditors, so that neither class can share in the fund appropriated to the use of the other until the latter has been fully satisfied, is recognized by the supreme court of the United States as the settled law of this country. The exceptions not pertinent to this case which have been above recited as attaching to the English rule are not considered as law in this country. Murril v. Neill, 8 How. [49 U. S.] 421. The case arose on the construction of a deed of trust for the benefit of creditors. The premises conveyed by the deed were the private property of one of the insolvent partners. It was held by the court (Daniels, Justice, delivering the opinion), that the deed on a proper construction passed the property to his separate creditors; but if such was not

a proper construction, on the well-settled principles of equity, as established in England and in this country, the separate estate was set apart for the separate creditors, and could not be infringed on by the joint creditors until all the former had been fully satisfied. As the rulings of the supreme court are obligatory on this one, and as the case is precisely in point, I shall extract from it at some length. The court say (page 426): "The rule in equity, governing the administration of insolvent partnerships, is one of familiar acceptation and practice; it is one which will be found to have been in practice in this country from the beginning of our judicial history, and to have been generally, if not universally received. This rule, with one or two eccentric variations in the English practice which may be noted hereafter, is believed to be identical with that prevailing in England, and is this: that partnership creditors shall in the first instance be satisfied from the partnership estate; and separate or private creditors of the individual partners from the separate and private estate of the partners with whom they have made private and individual contracts; and that the private and individual property of the partners shall not be applied in extinguishment of partnership debts, until the separate and individual creditors of the respective partners shall be paid. The reason and foundation for this rule, or its equality and fairness, the court is not called on to justify. Were these less obvious than they are, it were enough to show the early adoption and general prevalence of this rule, to stay the hand of innovation at this day at least under any motive less strong than the most urgent propriety." The court here gives a history of the establishment of the rule as now in force, of interest to the legal reader, but too long for insertion in this opinion, and concludes in these words: "The proper conclusion from these authorities we deem to be this, as is stated by Justice Story in his treatise on Partnership (section 376), where he says: 'It is a general rule,' etc., etc., in the words already above quoted from Story's Law of Partnership."

Chancellor Kent, in the third volume of his Commentaries (page 65), says: "The joint creditors have the primary claim on the joint fund in the distribution of the assets of bankrupt or insolvent partners, and the partnership debts are to be settled before any division of the funds takes place. So far as the partnership property has been acquired by means of partnership debts, these debts have in equity a priority to be discharged; and the separate creditors are only entitled in equity to seek payment from the surplus of the joint fund after satisfaction of the joint debts. The equity of the rule on the other hand equally requires that the joint creditors should only look to the surplus of the partners after payment of the separate debts. It was a principle of the Roman law, and it

has been acknowledged in the equity jurisprudence of Spain, England, and the United States, that partnership debts must be paid out of the partnership estate; and private and separate debts out of the private and separate estate of the individual partner. If the partnership creditors cannot obtain payment out of the partnership estate, they cannot in equity resort to the private and separate estate until private and separate creditors are satisfied; nor have the creditors of the individual partners any claim upon the partnership property, until all the partnership creditors are satisfied. The basis of the general rule is, that the funds are liable on which the credit was given. In contracts with the partnership the credit is supposed to be given to the firm; but those who deal with an individual member rely on his sufficiency."

It is contended, however, by the petitioner, that the firm of "John McLean & Son" was a separate creditor of John P. McLean, one of the bankrupt partners, and that he as the assignee of the bankrupt firm succeeded to all its rights, and thus is entitled, at the suggestion of and for the benefit of the joint creditors, to prove the firm's debt against one of the bankrupt partners. It is argued that this is not the case of joint creditors going upon a separate fund, but that the assignee in this case, succeeding to all the rights of the firm against John P. McLean individually, is entitled in equity, as a separate creditor, to prove its claim against him and come on his separate estate pari passu with his other separate creditors. It is further argued that this is an equitable claim and can be proven in bankruptcy; and that the right is expressly given by the bankrupt act to all separate creditors to prove their separate claims, so that the petitioner would be deprived of a right granted by congress, were the court to refuse to allow the petition.

It is also insisted on, as a reason for allowing the assignee to prove the claim of this firm as a separate equitable claim against John McLean, and to come on his separate property pari passu with his separate creditors, that there would be no liability over from the firm to any of the separate creditors; and that admitting such proof would not present the objection of permitting competing creditors to strive for a fund for which when obtained they might be liable over to other parties. So that the question now arises, is there a separate debt which is provable under the bankrupt act against the separate estate of the said J. P. McLean? Story, in section 391 of his work on Partnership, says, "The like question may arise in the converse case when the joint creditors seek to prove a debt from a single partner to the partnership against the separate estate of that partner; and here also it is now the settled rule that when one partner has become indebted to the firm, or has taken more than his share out of the joint funds, the joint creditors are not to be admitted to prove against the separate estate of that partner until his separate creditors are satisfied, unless it can be shown that in drawing out the money the partner has acted fraudulently with a view to benefit his separate creditors at the expense of his joint creditors." Mr. Gow, in his treatise on Partnership, says on this point: "The law sanctioned by the authorities of Lord Talbot and Lord Hardwicke formerly was, that if the debt raised by the partners arose out of contract, as upon a loan by the partnership to him, the joint creditors might be admitted to prove against the separate estate in competition with the separate creditors. But the opinions entertained by these learned judges have been receded from in more modern times, and the settled doctrine now is that if the claim arise out of contract, the estates are to be administered jointly and separately as they are actually constituted at the time of bankruptcy; the joint creditors not being permitted to recall into the joint fund what one partner has by contract, express or implied subtracted from the joint, and applied in augmentation of his separate estate. This rule was introduced by Lord Thurlow who, having much considered the question, finally determined that the assignees in behalf of the joint could not prove against the separate estate, unless the partner had taken the joint property with a fraudulent intent to augment his separate estate." "The principle established by Lord Thurlow's decision—i. e., Ex parte Assignees of Lodge & Fendal [1 Ves. Jr. 166]—has been acknowledged and followed by Lord Eldon; and it is now an indisputable rule in bankruptcy that when the debt from one partner to the partnership was incurred with the privity of his copartners, proof by the joint against the separate estate will not be admitted." Chapter 5, § 3, pp. 16–18. See, also, the opinion of Lord Eldon in Ex parte Harris, 2 Ves. & B. 212, 213.

It will thus be seen that the law in England is against the petition on this particular point of permitting the joint creditors to prove the creditor firm's claim against a bankrupt copartner proven. Lord Eldon in case last cited draws no distinction between the cases where the proving creditor is or is not liable over to the competing creditors. He states that there are other principles on which the rule if founded than the one "that a partner cannot come in competition with separate creditors, nor as to the joint estate with the joint creditors." And while we cannot see that John McLean, or the firm as the trustee of his interests, could be liable over to the separate creditors of John P. McLean in case they could reach his separate property, yet we fail to perceive that this constitutes any reason why the rule of equity which has been laid down so positively and clearly should not be applied, and especially as there are other reasons or principles which justify the rule. For, among others, it would violate the well-known principle that the rights of the

creditors are worked out through the medium of the partners. To permit the joint creditors, or the assignee for their benefit, to prove the separate claim of the firm against J. P. McLean's separate estate, or, which is the same thing in substance, the equitable claim of the creditor bankrupt, against his debtor bankrupt copartner, would assume that John McLean or his assignee (remitted to all his rights and liabilities) had a right to possess himself of and enjoy the proceeds of the equitable claim he had against his debtor copartner, equally with, or pari passu with the separate creditors of John P. McLean; whereas he had no such right, and could transmit none such to his assignee. There was no possibility of his having an enjoyable interest until all the partnership debts were paid. His liability in solido, covering all the property he might derive from any source other than the partnership, prevented this. In this case the records disclose the fact that the firm debts so far overbalance all the assets, joint and several, that there is no human probability of any one standing in John McLean's place ever being equitably entitled to a dollar from the separate estate of J. P. McLean. He only, under the most favorable circumstances, had a contingent equitable claim; but never had and most probably never could have any equitable right to the realization of this debt which he could transmit to his assignee either for his own benefit or that of the joint creditors of the firm. The separate creditors have the separate estates of the debtors and the residuum of the separate debtors' estate in the joint fund after the firm or joint creditors are all paid. The partnership creditors have primarily the joint fund or property of the firm to come upon, and afterwards all the separate estates of the separate partners, after all the separate creditors are fully satisfied. A bankrupt creditor of his bankrupt copartner has the residuum of the estate, separate and joint, belonging to the latter after all the separate creditors of the debtor bankrupt and the joint debts of the firm are fully satisfied. The first two classes of creditors have a present priority of right to come immediately on the funds appropriated for them, viz., the separate and joint estates. But the third class, viz., the bankrupt creditor partners of their bankrupt debtor copartners, have no such right; indeed have no fund whatever to come upon until all the partnership debts are first paid. To hold otherwise would be to ignore the well-settled rule that the rights of the creditors must be worked out through the medium of the partners.

The next question for consideration is: Is this mode of the distribution of the assets of an insolvent partnership, and of insolvent partners, altered by the provisions of the bankrupt law? for if it is, we must be guided implicitly by them, regardless of the settled rule which courts of equity in this country, and lately in England, have adopted. The act of congress having reference to this point is in these words (section 5121, Rev. St.): "The assignee shall be chosen by the creditors of the company. He shall keep separate accounts of the joint stock or property of the copartnership, and of the separate estate of each member thereof; and after deducting, out of the whole amount received by the assignee, the whole of the expenses and disbursements, the net proceeds of the joint stock shall be appropriated to pay the creditors of the copartnership, and the net proceeds of the separate estate of each partner shall be appropriated to pay his separate creditors. If there is any balance of the separate estate of any partner after the payment of his separate debts, such balance shall be added to the joint stock for the payment of the joint creditors. And if there is any balance of the joint stock after payment of the joint debts, such balance shall be appropriated to and divided among the separate estates of the several partners according to their respective right and interest therein, and as it would have been if the partnership had been dissolved without any bankruptcy; and the sum so appropriated to the separate estate of each partner shall be applied to the payment of his separate debts." The bankrupt law of 1841 [5 Stat. 440] has precisely this mode of distribution. Judge Nixon, U. S. district judge for the New Jersey district, in Re Melick [Case No. 9,399], has given his view of the meaning of this provision, both in the bankrupt law of 1841 and the present act. He says, "That section" (the 36th) "was first introduced into the bankrupt act of 1841, and in its main features embodied no new law, but was only declaratory of the equitable principles which the courts had adopted in the distribution of the bankrupt's assets. It was, nevertheless, proper and useful in this respect that it put to rest the long-mooted and much-discussed question of the power of the bankrupt court in administering the bankrupt's estate, to make orders for the marshalling of assets and the payment of partnership debts with partnership funds and separate debts with separate funds, without the intervention of proceedings by bill in equity." In Re Lane [Case No. 8,044], Judge Lowell says: "The first question is, whether the joint creditors of the firm can have recourse to the separate estate for money drawn out by him while the firm was solvent with the assent of his co-partners." "The general rule in bankruptcy is, that there can be no proof between the joint and separate estates of partners unless there is a surplus of the joint estate to be divided. This rule was adopted, partly as being on the whole equitable, on the supposition that the joint creditors had given credit to the joint estate, and the separate creditors to the separate estates respectively; and partly, I apprehend, upon the consideration that there is no such thing as a debt between partners or between a partner and his firm in respect to partnership matters, excepting upon a wind-

ing up of all the affairs. And it was found to be very expensive and inconvenient to go into a general accounting in bankruptcy, and it was thought more expedient as well as more just to take the estates as the parties left them." So that in this case the precise point is made and decided that the joint creditors cannot prove the debt of the creditor bankrupt partner as against his debtor bankrupt copartner. He denies that it is a debt of such character as to be provable under the bankrupt act, much less such a one as to let in the joint creditors through an equity in the creditor bankrupt partner against his copartner, upon the separate fund. This same point has been decided under the insolvent law of Massachusetts by the supreme court of that state in 10 Cush. 592. As before observed, that law, as regards the distribution of the insolvent's estate, holds the precise language of our bankrupt act, with the exception of using the word "company" for the word "partnership."

The counsel for the petitioner tried to break the force of this decision by saying that equitable claims could not be proven under the insolvent law of Massachusetts. But the court did not place their decision on any such ground, nor indeed did they allude to such an idea. On pages 597 and 598 they say: "Our statute on this subject must be our guide; and whether in accordance with the views of Lord Hardwicke, in favor of joint creditors being admitted to share in the distribution of the separate estate, or of Lord Thurlow, who held the contrary view, it is equally the law to be administered here." "The statute under which these proceedings in insolvency were instituted, and by virtue of which the assignees hold these assets, has declared that, in cases where proceedings are thus instituted against a copartnership, all the estate of the partnership and all the separate estate of the individual partner shall be passed into the hands of the assignees, that the avails thereof shall be kept distinct, and, 'that the net proceeds of the joint stock shall be appropriated to pay the creditors of the company, and the net proceeds of the separate estate of each partner shall be appropriated to pay his separate creditors; and if there shall be any balance of the separate estate of any partner after the payment of his separate debts, such balance shall be added to the joint stock for the payment of joint creditors; and if there shall be any balance of the joint stock, after the payment of the joint debts, such balance shall be divided and appropriated to and among the separate estates of the several partners.'" St. 1838, c. 163, § 21. In this case the court would not permit the claim to be proven as against the separate estate. There was no absolute refusal of the proof of the claim. Now, unless there is something more in our bankrupt act to give these joint creditors a right to go upon the separate estate of the said John P. McLean than has already been

noticed, I would consider the above-cited case conclusive.

The counsel for the petitioner, however, claim that they have the right to prove an equitable claim held by the firm against one of the copartners, and if they have a right to prove, then they have a right to prove against the separate estate and come in pari passu with the separate creditors. Judge Lowell has denied the right to prove at all. He says it is not the kind of a debt provable in bankruptcy. But admitting it can be proven, does it follow that it must be paid pari passu out of the separate estate, with all the separate creditors? The supreme court of Massachusetts did not refuse to have the claim proven, but denied the right to let it in on the separate fund until all the separate creditors were paid. In section 14 of the bankrupt act, "all rights in equity" of the bankrupt descend to the assignee. In section 19 it is enacted that "all debts due and payable from the bankrupt, at the time of the adjudication of bankruptcy," may be proved against the estate of the bankrupt. In the 1st section there is this language: "And the jurisdiction hereby conferred shall extend to all cases and controversies arising between the bankrupt and any creditor or creditors who shall claim any debt or demand under the bankruptcy; to the collection of all the assets of the bankrupt; to the ascertainment and liquidation of all the liens and other specific claims thereon; to the adjustment of the various priorities and conflicting interests of all the parties, and to the marshalling and disposition of the different funds and assets so as to secure the rights of all parties, and due disposition of the assets among all the creditors; and to all acts, matters, and things, to be done under and in virtue of the bankruptcy, until the final distribution and settlement of the estate of the bankrupt and the close of the proceedings in bankruptcy." In the 36th section are these words: "And all the creditors of the company and the separate creditors of each partner shall be allowed to prove their separate debts."

These are the chief, if not all the provisions of the act from which is derived the conclusion that the court is bound by its proper construction to allow the claim to be proven, and the assignee to come upon the separate estate for the benefit of the joint creditors. This act and its supplements must be construed, if possible, so that it shall be consistent with itself, and so that all its parts shall cohere and be made efficacious. I am not prepared to go to the length Judge Lowell has gone, in denying the proof of this claim; but I am very clear in forbidding the assignee, after proof is made, to touch the separate estate of John P. McLean until all his separate creditors have been paid. It is admitted that the firm can be the separate creditor of John P. McLean (or more exactly that the firm stands as a trustee of the creditor bankrupt debtor, for the firm can have no

ultimate enjoyment or usufruct, indeed is incapable in its nature of having it, but only stands as a medium for accounting between the partners. Nevertheless as a legal entity it is treated as creditor and debtor to the partners individually). There was then an equitable claim the firm had against John P. McLean for money advanced by John McLean to the firm, over and above the amount he was called on to contribute as his share of the partnership funds. Judge Lowell, in Re Blandin [Case No. 1,527], says: "The 19th section of our statute makes provable all debts and liabilities, in language broad enough certainly to cover such as a trustee owes to his cestui que trust or a partner to his copartner," so that we can hardly suppose he meant later, in Re Lane [Id. 8,044], altogether to deny the right to prove the debt, but rather the right to the assignee to come in on the separate fund for the benefit of the joint creditors. I do not see how, without violating the express language of the 19th section of the bankrupt act, I can refuse to allow the claim to be proven. There are other reasons why the claim should be proven, conspicuous among which are these: 1. It is not beyond the contemplation of law, however improbable, that funds may not come to the hands of the assignee with which he could pay, in part or in whole, John P. McLean's indebtedness to the firm. Suppose after the bankruptcy the real estate or other property of the partnership had so risen in value as to be more than sufficient to pay off all the firm debts. Then the assignee, I apprehend, could let in himself as the assignee of the firm, pari passu with the separate creditors of John P. McLean on his separate estate. So that, to meet all possible contingencies, it is necessary to have the proof made in order that the estate should be properly distributed, for the assignee can pay no debt unless it is first proven. And the case might in contemplation of law arise when he had the funds in his possession, and the knowledge that there was a just and equitable claim by one partner or another, and demand the power to pay it. 2. John P. McLean, if his conduct is not impeached by fraud or other impropriety, which stands in the way of his discharge, is entitled to a certificate of discharge in bankruptcy. If it should be that this debt is not provable, then he is not free from his liability therefor, for it is only from such debts that his certificate discharges him. He should be entitled to discharge from this separate debt as well as from any other separate debt. And as one of the prominent features and intentions of the law is to give complete relief in the absence of fraud, it would fail of its purpose if he was decreed a discharge as respects this debt.

I have no hesitation in allowing the debt to be proven. I am however equally clear that the debt should not be proven against the separate estate, for the following reasons: 1. There is no reason to suppose that congress intended to alter the mode of distribution of the insolvent's estate as recognized by the later cases in England and the United States. On the contrary it is fair to infer that it meant to adopt and enact those decisions as the law of the land. 2. Any other construction would not permit this act as a whole to stand and give effect and operation to all its parts. 3. The act plainly commands that separate funds shall be appropriated to separate classes of creditors, who have a priority therein, which shall not be encroached upon until the preferred creditors are fully satisfied. Now it is asked that the assignee be permitted to take funds prohibited to one class until the other is fully satisfied, and appropriate them pari passu to both classes. The proving of this claim then with this result attached would be a mere device to accomplish a forbidden purpose, and as such should not be permitted. No application of the assignee to prove a partner's debt against his bankrupt copartner can deprive these joint creditors seeking their pro rata divisions of their character as joint creditors. They cannot be remitted to the character of separate creditors by and through the medium of an equity as John McLean, for he had, as before said, no equity to transmit until all the debts of the firm were paid. Such then being their character as joint creditors, there is no mode of escape from the conclusion that they cannot come on the separate estate pari passu with the separate creditors. 4. On this construction all the equities of the creditors are preserved; the joint creditors have their fund to go on, the separate theirs, and the creditor bankrupt of his debtor copartner his, should all the joint debts first be fully satisfied; but until then he cannot possess a quality, character, or merit which will change the character of the joint creditors to that of separate creditors, and enable them to come into the present possession of a fund which, as the record at present discloses, John McLean never could have touched.

Let an order be entered admitting the proof of the claim of the firm of John McLean & Son against John P. McLean, but restraining the assignee from applying any portion of the separate estate of John P. McLean until all his separate creditors are fully satisfied.

[See Case No. 2,378.]