BURROWS *v.* LEECH.

1. Partnership — Insolvency — Mortgages — Common Partner.
   A mortgage given by an insolvent firm to another firm to secure a valid indebtedness is not fraudulent, as a matter of law, as against unsecured creditors, by reason of the fact that the firms have a common partner.

2. Same—Equity—Scope of Examination.
   The disposition of equity, when once it acquires jurisdiction of a controversy, to make its examination broad enough to do full and exact justice between the parties, would not necessarily impel it, in a suit involving an indebtedness between firms having a common partner, to go beyond the adjustment of the claim as between the firms, for the purpose of ascertaining, by taking an account of the business of the creditor firm, what, if any, balance could be found in favor of the common partner, in order that such balance might be deducted from the amount of the recovery.

3. Same—Basis of Adjustment.
   The argument, therefore, that firms having a common partner cannot have their controversies adjusted at law, nor in equity except upon the basis of individual, as contradistinguished from firm, rights, is of no force when invoked by unsecured creditors of the debtor firm in support of a contention that security given to the creditor firm should be applied to the claims of general creditors to the extent that it benefits the common partner.

4. Same—Firm Note—Presumption.
   A note executed by a partnership will be presumed, in the absence of a contrary showing, to be a valid claim against the firm, although it was given for the debt of one of the members.

5. Debtor and Creditor—Security—Fraud.
   Evidence of the invalidity of a single claim sought to be secured with other valid claims by a mortgage executed by an insolvent is insufficient to show an intent to defraud unsecured creditors, where the amount of the invalid claim is trifling in proportion to the whole amount secured.

6. Same.
   Unsecured creditors of an insolvent cannot complain because assets of the debtor were applied by the secured creditors to

the payment of an invalid claim, where the total assets were
insufficient to satisfy the valid claims secured.

7. SAME—PRIORITIES—ADJUDICATION.
    The adjudication of the rights of secured creditors of an
    insolvent under their several securities, postponing them to a
    certain mortgage, will not preclude them from asserting, as
    against unsecured creditors, their superior claim to a fund
    appropriated by the trustee under the prior mortgage to the
    payment of an invalid claim.

Appeal from Wayne; Lillibridge, J. Submitted No-
vember 4, 1897. Decided March 1, 1898.

Judgment creditor's bill by George L. Burrows and
Amasa Rust, copartners as Burrows & Rust, against
Edward W. Leech, survivor of himself and Patrick M.
Gamble, deceased, copartners as E. W. Leech & Co.,
and Archibald G. Lindsay, individually and as receiver.
Complainant Rust died pending the hearing, and the
cause was revived in the name of complainant Burrows
as survivor. From a decree dismissing the bill, com-
plainant appeals. Affirmed.

*Thomas S. Jerome* (*H. E. Spalding*, of counsel),
for complainant.

*De Forest Paine* and *Hoyt Post*, for defendant
Lindsay.

HOOKER, J. One Gamble was a member of two co-
partnerships, viz., E. W. Leech & Co., consisting of E.
W. Leech and himself, and Lindsay & Gamble, consist-
ing of the defendant Lindsay and himself. The firm of
E. W. Leech & Co. and its individual members became
insolvent, and Gamble, for and on behalf of the firm, gave
mortgages upon the firm property, to secure certain credi-
tors. The first mortgage was given to the Michigan
Savings Bank, the second to Lindsay for the purpose of
securing claims of Lindsay & Gamble and the People's
Savings Bank, and these were followed by several others,
given to persons and firms not parties to this record.

116 MICH.—3.

Some questions arise upon the nature of two of the claims covered by the second mortgage, but there is no doubt that one of these represents an indebtedness from E. W. Leech & Co. to Lindsay & Gamble, for lumber purchased by the former from the last-mentioned firm. Proceedings were commenced in chancery to foreclose the mortgage given to Lindsay, and to convert the mortgaged property (which was mostly personal) into money, that it might be applied upon the several mortgage claims, in proper order, so far as it would go. It seems to be admitted that there was not sufficient to pay all of the mortgages. All of the mortgagees were made parties, and Lindsay was appointed receiver, and sold the property under an order of the court. A final decree was made, directing the order and amounts in which the fund should be applied to the several mortgages. The complainants (unsecured creditors of E. W. Leech & Co.), having procured a judgment upon their claim, applied to the court having jurisdiction of the proceedings mentioned for leave to levy execution upon the property, subject to the mortgages, and this was granted. The execution was subsequently returned with a small collection from another source, and unsatisfied as to the residue. The bill in this cause was then filed, attacking the mortgage given to Lindsay as fraudulent, and asking that the receiver be required to account to the complainants, upon the ground that, inasmuch as there was a common partner, the mortgage given secured a debt in which one of the mortgagors was interested as creditor, and that, if held valid, it would have the effect of withdrawing some of the assets of E. W. Leech & Co. from their creditors, and applying them to the purpose of one of the members of the firm, i. e., Gamble. It is also claimed that the mortgage was made with an intent, upon the part of Gamble, to defraud the creditors of Leech & Co.

The first contention rests upon the well-known principle of the law that, while copartnerships are treated as distinct entities in the mercantile world, they are not in the law, all common-law actions being brought for or against

persons constituting the firm, in their individual names, and upon the rule that one cannot be both plaintiff and defendant in an action at law. The authorities are therefore uniform to the effect that one firm cannot maintain a common-law action against another having a common partner, though the law does not treat contracts between such firms as void, and it is only necessary for the creditor firm to make an assignment of its claim, to make it collectible by an action at law. Evidently, as the technical rules mentioned are the only obstacle to collection of a debt by one firm against another in an action at law, the prohibition does not rest upon any obvious injustice, but is a good illustration of that inelasticity of the common law which it is the province of equity to remedy. The authorities agree that equity may take cognizance of these cases in a suit between the parties. Still equity follows the law in both respects. It does not treat the partnership as an entity, nor does it make the common partner both complainant and defendant; but, all being before the court, it so frames its decree as to grant proper relief.

Counsel for the complainants do not dispute the jurisdiction of equity in a suit arising between, and restricted to the members of, the debtor and creditor firms. They do, however, maintain that in such a suit a court of equity would not content itself with treating the two firms as distinct entities, and make a decree for the whole amount of the debt, but that, inasmuch as it is dealing with individuals, it must sift out individual, as contradistinguished from firm, rights, and that it must therefore take an account of the business of the creditor firm, and ascertain what, if any, balance can be found in favor of the common partner, that such balance may be deducted from the amount of the complainants' recovery. Here we may pertinently inquire why equity should be so strenuous to leave the interest of the common partner in the debtor rather than the creditor firm, where, as in this case, he might prefer to have it left, and where justice to persons not members of either firm might imperatively require

that it should be left.    Again, it would seem to logically
follow that if it is dealing with individuals, rather than
partnership entities, and is going to do complete justice to
all, it must go further, and take an accounting of the
business of the debtor firm, in order to know what member
is to have the benefit of this deduction.    Counsel cite, in
support of this proposition, an anonymous article published
in 5 Am. Law Rev. 47, which contains the best exposition
of this theory that we have seen.    The author reaches the
conclusion by a process of reasoning from admitted
premises, and his aim seems to be, not to maintain the
justice or expediency of such a rule, but its existence as a
logical necessity, growing out of the legal *status* of the
copartnership, with which it is evident that he is not in
sympathy.    The article concludes as follows:

" On the whole, therefore, it seems to us that a dissolu-
tion of the plaintiff firm is necessary, and, as incident
thereto, an account between its members, before this debt
can be recovered.    That no more direct remedy can be
had seems evident from the entire absence of adjudication
upon the subject in the English equity courts, where such
cases would certainly be frequent were there any remedy
short of a dissolution.    Like so many other anomalies in
the law of partnership, this springs entirely from the fail-
ure of the courts to recognize the personality of the firm;
and until that is done, and until the courts in their rules
of practice cease to make the relation of partnership con-
form to a code of rules adopted in a state of society where
mercantile usages had little influence, no change for the
better will be made."

We may agree with him that matters would be simpli-
fied by the adoption of the rule of the civil and Scottish
law that copartnerships, like corporations, should be
treated as legal persons, and that the harmony of our jur-
isprudence would be thereby made more perfect; but we
are not convinced that there is no escape from the hard
logic by which his result is reached.    The difficulty with
it seems to be that it ascribes to equity some of the inelas-
ticity pertaining to legal remedies.    If the author is cor-
rect, in addition to the "anomaly" that he mentions, we

have another, viz., a case where, by reason of the rigidity of legal rules, equity cannot find a way to afford merited relief, which it is the especial boast of equity that it can always do; and this seems to stand entirely upon the proposition that in no case will equity "do things by halves," but that, having jurisdiction of a subject, it will refuse to deal with it, unless it can settle finally all questions appertaining to or growing out of the subject. We are not disposed to deny that in a proper case equity might go to great lengths to do full justice between the parties, but not to do injustice; rather than to do which it might better "do things by halves," and doubtless would. As will be seen by the article mentioned and the cases therein cited, it is admitted on all hands that equity has jurisdiction in such cases in suits between the members of the two firms. We disagree with the conclusion that it must in all cases settle the partnership affairs of one or both concerns before making a final determination. Were this a suit between the two firms, both being solvent, brought merely to settle a disputed claim, it would be a hardship to compel both to submit to accounting, that equity might settle innumerable and infinitesimal questions that neither cared to have settled, as incident to some relief which neither party desired, because of their ability to adjust their own affairs after the disputed question should be disposed of. It would be quite time enough to go into these matters when the pleadings should show that justice required it.

Conceding that equity may require an accounting if justice requires it, with a view to setting off against the debt the interest of Gamble therein, we will examine the situation. Leech and Gamble owed Lindsay & Gamble $16,000 or thereabout. It was an honest and valid debt. In a suit by an assignee, no question of Gamble's interest could be raised by way of set-off. If Gamble had seen fit to pay it, Leech must have accounted with him for his share. No creditor could dispute the validity of such payment. Had property been given in payment, it would

have been a valid transaction. But, instead of this, property was pledged, by way of mortgage. Leech appears to have consented to this when informed of it; but the firm creditors—*i. e.*, these complainants—attack it, saying that it is a fraud upon them, because it applied firm assets to a claim of Gamble, a member of the firm, thereby using the assets to pay their (complainants') debtor. The only foundation for this is that in judicial proceedings the copartnership is not treated as an entity for the purpose of procedure. But it is so treated for some purposes. We have seen that it is only necessary that the claim be assigned to show that the courts do not hold the contract invalid. It is a familiar rule that a partnership is so much of an entity that its assets may not be reached by a creditor of a partner until the creditors of the firm are satisfied, showing that its members are not treated as owners of aliquot portions of the property, as in cases of tenants in common. Even between themselves, an accounting must be taken before it can be determined that a partner's interest amounts to more than a duty to pay the debts of the concern. Courts of bankruptcy uniformly allow a creditor firm to prove its whole claim against a debtor firm having a common partner, and make no account of the interest of the common partner. We do not discover that this is limited to cases where the creditor firm is insolvent. If it were, it would become necessary for the court to inquire into the solvency of all firms having obligations against the creditor, as well as the debtor, firm, where there was a common partner in such firms, and bankruptcy proceedings might be interminable. In 17 Am. & Eng. Enc. Law, 918, it is said:

"While the common-law conception of a partnership was that it was not a thing in any way distinct or separate from the members composing it, the law of Scotland, the Roman law, and the system of continental Europe, as well as that of Louisiana, regarded a firm as a separate person, having distinct rights and interests, and capable of suing and being sued by its own members. Equity has treated partnerships as distinct from their members in

some respects, and now judicial determinations that *a firm is a distinct entity are frequently found.*"

A long list of cases support the statement.

Lindsay & Gamble were, like these complainants, creditors of Leech & Co. The assets of that firm were subject to their claims. Either might be lawfully paid, and a court would treat them alike in proceedings in bankruptcy. The amount paid to Lindsay & Gamble might furnish a fund out of which these complainants could realize something more, if, upon adjustment of the affairs of Lindsay & Gamble, a balance should be found due Gamble. But, by the ingenious process of reasoning adopted, an effort is made to deprive the creditors of Lindsay & Gamble, and the surviving partner, Lindsay, of the right of collection of any portion of their claim out of the amount due from Leech & Co., notwithstanding the fact that Lindsay & Gamble were made preferred creditors by Leech & Co., and, unless by reason of Gamble's common interest, might lawfully be such. By this course of reasoning they thwart Leech & Co. in their attempt to prefer another creditor, and succeed in getting themselves preferred. It must be conceded that, unless Gamble has some tangible interest in this debt, the complainants have no "leg to stand on;" for their equities against Gamble are in no way superior to those of the creditors of Lindsay & Gamble, or, for that matter, Lindsay, and their claim against Leech & Co. is no better than Lindsay's claim growing out of his partnership with Gamble; so their contention cannot, in any event, find a more substantial basis than the proposition that they have superior equities than Gamble's personal creditors because this property belonged at one time to Leech & Co. By the transfer to Lindsay & Gamble it was taken from the assets of Leech & Co., and substantially became assets of Lindsay & Gamble; and thereafter the complainants were in as good and no better position than Gamble's personal creditors, of which we think they have no reason to complain; for, whatever else may be said,

Gamble's interest, whatever it may have been, arising out of his connection with Lindsay & Gamble, was not in any sense or at any time an asset of Leech & Co.

This conclusion practically settles the question of fraud so far as it is predicated upon the inability of Gamble to appropriate to his own use the assets of Leech & Co. through this mortgage. We should, however, advert to the case of *Kayser* v. *Heavenrich,* 5 Kan. 324, which is relied on by the complainants as sustaining their contention that legally this was a fraud, and it must be admitted to be closely in point. In that case J. Westenberger was a partner in the firm of J. Kallman & Co., in whose name he executed a deed of assignment to the plaintiff, whereby he conveyed to him all of the firm's property, to be converted into money, with which he was to pay *pro rata* certain preferred creditors, among whom was one Loewĕnthal. "In this alleged claim, Westenberger was half owner, they being partners." This was concealed. The trial court found these facts, and that, to the extent of his (Westenberger's) part of the amount for which he preferred Loewenthal, the assignment was for his own benefit, and void, and that the deed was made with intent to defraud the creditors of Kallman & Co. We may note here that the opinion states the material question thus:

"The evidence, which makes part of a very voluminous record, fully sustains the findings of the court *as to the facts,* and the one material question for consideration is whether, *the facts all being true,* the conclusion of the court that the instrument of assignment is void is a just conclusion of law."

Attention is directed to the fact that the court was careful to base its opinion on the *truth of all of the facts,* and not alone upon the fact that Westenberger was a partner of Loewenthal in the particular claim. Again, there is a possible distinction in the fact that the case does not show that Westenberger was a partner in any other sense than that of part owner of this particular claim. It is said that "one-half of this amount is of right the prop-

erty of one of the assignors [which would hardly be accurate if they were copartners], and is a secret trust for his benefit." This would seem to imply that they were merely tenants in common of the claim, and that the relation of copartners may not have existed. The court determined that the facts in that case showed that there was a secret trust for the benefit of the maker of the instrument, and that it was void under a statute there cited. But, if we give this case the full force of the claim made for it, we shall find it unsupported, except as it may be thought to be supported by those authorities which hold that individual debts against partners are postponed to partnership obligations so far as partnership property is concerned, in which the decisions are uniform, but which we do not consider decisive of this question.

This conclusion does not settle the question of fact wherein lies the claim that this mortgage was given with the intent to defraud the creditors of Leech & Co., of which it is said the firm of Lindsay & Gamble were advised, because the knowledge of Gamble, who made the mortgage, was the knowledge of the firm of Lindsay & Gamble. We see no evidence of such intent, unless it is to be found in the fact that the mortgage covered the claims of the bank, $3,000, and Patterson, $725. If these were not debts of Leech & Co., they were improperly included. As to the former, we are satisfied that equity should treat it as a debt of Leech & Co. As to the Patterson claim, the facts are as follows: Patterson sold a monument to Gamble. In payment, he received some money and a note of $400, signed by Gamble, and one of $325, signed by Leech & Co., dated December 1, 1890. At the time the mortgages were given, both of these notes were unpaid, and in the hands of the bank, and are understood to have been covered by a note for $725, given with the mortgage, which mortgage, as stated, was understood to be given Lindsay in trust for the payment of the claims of Lindsay & Gamble and the bank. Lindsay knew nothing about the condition or possibly the existence

of the Patterson claim when he took the mortgage. He did when he paid it. It is possible that the $325 note was a valid claim against Leech & Co. At least, we cannot say that the evidence shows it to be otherwise, though given for the debt of Gamble. See 1 Bates, Partn. § 565 *et seq.* The $400 note never was a valid claim against them, and the mortgage could not stand as security for that, as against the creditors of Leech & Co. This, however, would not benefit the complainants, as it would simply increase the fund for the payment of succeeding mortgages, which is shown to have been inadequate. Gamble was sick at the time, and died soon after, so we have not the benefit of his version of the affair; but the amount is so trifling in proportion to the entire transaction that it does not impress us as an intended wrong to creditors. As stated, the succeeding mortgagees would have had a superior right to this amount had they asserted it. But they did not, perhaps because ignorant of the fact. The complainants now claim that inasmuch as the court has adjudicated the rights of the succeeding mortgagees, and postponed them to the mortgage of Lindsay, including the amount of the Patterson claim, they are cut off from making any claim to this fund, and, for that matter, to the amount of such mortgage to Lindsay, if it should be set aside, leaving it open to the complainants' claim; but we think this an inequitable claim, and, before we should permit it, we should allow such mortgagees to be heard, to ascertain whether they were parties to any fraud against the complainants, of which this record furnishes no evidence. As to the Patterson matter, in view of the inadequacy of the fund to pay all of the mortgages, the mere fact, if it should prove to be a fact, that the later mortgagees consented to its payment, thereby lessening their own fund, is not a matter of which these complainants can complain.

Upon the whole record, we are satisfied that the decree of the circuit court has done substantial justice. It will therefore be affirmed, with costs.

The other Justices concurred.