## Case No. 7,369.

### In re JOHNSON et al.

[2 Lowell, 129.] [1]

District Court, D. Massachusetts. May, 1872.

S. A. Bolster, for separate creditor.
C. P. Hinds, for joint creditors.

LOWELL, District Judge. That partners may dissolve their connection, and, as part

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

of the arrangement, may convey all the assets to one of them, and may thus lawfully convert joint into separate estate, has become an established doctrine in equity as well as at law. Ex parte Ruffin, 6 Ves. 119; Ex parte Fell, 10 Ves. 347; Howe v. Lawrence, 9 Cush. 553; Robb v. Mudge, 14 Gray, 534; Ex parte Williams, 11 Ves. 3. The rule, and the reason for it, are thus stated in Story on Partnership (section 358): "While the partnership is solvent and going on, the creditors have no equity, strictly speaking, against the effects of the partnership. All they can or may do is to proceed by action at law for their debts against the partners; and, having obtained judgment therein, they may cause the execution issued on that judgment to be levied upon the partnership effects, or upon the separate effects of each partner, or upon both. There being, then, no lien and no equity in favor of the creditors against the partnership effects until such execution is issued and levied thereon, it follows that these effects are susceptible of being legally transferred bona fide, for a valuable consideration, to any persons whatsoever, and as well to the other partners as to mere strangers." The injustice of this doctrine, when applied to a settlement in bankruptcy in which the courts recognize the assets as severed, but refuse to sever the debts, has struck many learned judges. Thus, Sir J. Leach, V. C., in Ex parte Freeman, Buck, 474: "I agree that it may be some hardship upon the joint creditors that the joint stock, to which they have specially given credit, should, by the dealing of their debtors with each other, be thus converted into separate estate. That hardship would have been avoided, if it could have been held that where, upon a dissolution, one of two partners is to become the sole owner of the joint stock, and it is a part of the consideration that he shall pay the joint debts, such joint stock shall not, in bankruptcy, be considered as converted into separate estate, unless he has paid the joint debts. The cases of Ex parte Ruffin [supra], and the others which have followed it, have established that the legal principle which converts the joint estate into the separate estate, by the mere force of the contract, is too strong for this equity."

Several of the cases present strong illustrations of this hardship. In Howe v. Lawrence, 9 Cush. 553, the firm had been dissolved but a few weeks before the bankruptcy, and but few new debts had been contracted, and there was newly acquired property to represent them.

The rule can never satisfy the courts or the suitors, and it has been made subject to several exceptions in England, which are of very doubtful application, to say the least, in this country. One of them is involved in this case; namely, that if there is absolutely no joint estate and no solvent partner, that is, no partner out of bankruptcy, the joint creditors may come in against the separate

estates of the partners in competition with the separate creditors. This exception is called "an eccentric variation," by Daniel, J., delivering the judgment of the supreme court in Murrill v. Neill, 8 How. [49 U. S.] 426, and at pages 427, 428, the learned judge expresses great doubt of its soundness, and of its having been adopted in this country. He cites McCulloh v. Dashiell, 1 Har. & G. 96, as expressly repudiating it. It has been doubted or positively denied by several other courts in America. See In re Marwick [Case No. 9,181]; Howe v. Lawrence, 9 Cush. 553; Somerset Potters' Works v. Minot, 10 Cush. 592; Weyer v. Thornburgh, 15 Ind. 124; In re Byrne [Case No. 2,270]. There are others which uphold it, and I have carefully read them; but I do not see in them a very full and careful consideration of the authorities, and reasons which have been brought to bear against it. I find it difficult to say that the clear and decisive command of the bankrupt act (section 36), requiring the joint estate to be appropriated to pay the creditors of the copartnership, and the separate estate of each partner to pay his separate creditors, is dependent for its operation upon the accident that the joint fund has already been exhausted before the bankruptcy, in paying the joint debts, or in any other lawful way. Mr. Justice Bigelow, speaking of the statute of Massachusetts which congress has adopted, totidem verbis, says, that it is distinct and peremptory, and recognizes no such exception. Howe v. Lawrence, ubi supra.

The better mode of meeting the difficulty seems to me to be to permit the joint creditors to assent to the conversion, and thus to become separate creditors, even after bankruptcy has occurred. The decisions have been tending to this point, though but few have yet reached it. The early cases laid down the rigid rule, that there could be no substitution or conversion by which a joint debt of two partners should become the separate debt of the remaining partner; because there was no consideration for the relinquishment of the responsibility of the retiring partner. Lodge v. Dicas, 3 Barn. & Ald. 611; David v. Ellice, 5 Barn. & C. 196. This strict construction, under the guise of protection to the rights of the creditor, really destroyed them, in many cases; and it is now well settled, in England, that if the creditor has assented to the change, whether expressly or by a course of dealing, the debt is severed. Thompson v. Percival, 5 Barn. & Adol. 925; Oakeley v. Pasheller, 4 Clark & F. 207; Hart v. Alexander, 2 Mees. & W. 484; Lyth v. Ault, 7 Exch. 669; 1 Lindl. Partn. (2d Ed.) 454. In bankruptcy, it is always permitted to a creditor who has assented to the arrangement to prove against the estate of the substituted debtor. Colly. Partn. (5th Am. Ed.) § 918; Robs. Bankr. p. 508.

The law in this country is not entirely uniform, but the better opinion seems to be in accordance with the later decisions in England. Story, Partn. (6th Ed.) §§ 155, 156; Pars. Partn. 421; Waydell v. Luer, 3 Denio, 410; Backus v. Fobes, 20 N. Y. 204; Shaw v. McGregory, 105 Mass. 96; Harris v. Lindsay [Case No. 6,124]. In Wild v. Dean, 3 Allen, 579, decided in 1863, it was held that, even in bankruptcy, to enable a creditor to share in the continuing partner's estate it was not enough that the continuing partner had become bound to the retiring partner to assume all the debts, and that the creditor had assented, but there must be a new promise to pay each creditor in particular. This decision does not seem to accord with the recent authorities above cited; and the law of Massachusetts was very soon changed by St. 1865, c. 113, which gives the creditor his election, and permits him to exercise it even after the debtor has become a statute bankrupt. This appears to be a reasonable rule, as I have before said. The courts have thought the choice should be made before actual bankruptcy; because that act is supposed to fix the rights of all parties, and under all circumstances, beyond any possible modification. In this I find the courts have been too rigid, because bankruptcy often follows very close on the change of the firm, and before the creditors have had an opportunity to elect; and there is really no reason why they should not elect by offering to prove their debt, as well as in any other way. It is the bankrupt who loses the power of action, and not his creditors, by his filing a petition in bankruptcy. There is no possible equity against this rule; because any new creditors whom the continuing partner may have dealt with, may well enough be put to inquire the terms on which the old firm was dissolved; and they, in fact, would usually know it. The doctrine which severed the assets and refused to sever the debts, not only did an injustice to the joint creditors, but often gave an altogether unexpected and unjust advantage to separate creditors; for it, of necessity, let in against the assets all the separate creditors, though their debts may have been contracted during the continuance of the firm.

I come now to a consideration which appears to me not to have received its due weight in some of the discussions of this subject. It has been held by highly respectable authority, and is the law of New Hampshire, and perhaps of some other states, that the creditors themselves have an equity, independently of the partners, to require the assets to be marshalled at least when the firm is actually insolvent. Ferson v. Monroe, 1 Fost. (21 N. H.) 462; Jarvis v. Brooks, 7 Fost. [27 N. H.] 37; Benson v. Ela, 4 Fogg (35 N. H.) 402; Jackson v. Cornell, 1 Sandf. Ch. 348; Burtus v. Tisdall, 4 Barb. 571. But the better opinion appears to be, that, there being no such thing as a preference known to common law or to equity, there is no way, in the absence of a bankrupt law, of reaching any result which will make the

marshalling compulsory, excepting by attachment, or through the intervention of a court of equity; and that until suit brought the partners may honestly dispose of their property as they please, though it be to pay all their joint property to a separate creditor, or vice versa. I do not see how this conclusion can be escaped in the absence of a bankrupt law. Indeed, it is involved, together with much more, in the decision of Ex parte Ruffin, and all the cases which have followed it. See an able and learned discussion of the subject in the notes to Silk v. Prime, 2 Lead. Cas. Eq. (3d Am. Ed.) 359, etc. But the point to which I now refer is this: When the bankrupt act lays down a positive rule of distribution for the joint and separate assets, and creates a fraud before unknown, called a preference, it is obvious that partners who owe debts of both kinds may commit that fraud by conveying their joint property to a separate creditor, or even by dissolving their firm and dividing their property, and thus working out a preference to all their separate creditors. In an early case under this bankrupt law, I held that such an act was in itself fraudulent, if it would bring about this illegal result, and was so intended. In re Waite [Case No. 17,044]; and see Collins v. Hood [Id. 3,015]; Ex parte Shouse [Id. 12,815]; In re Byrne [Id. 2,270]; Phillips v. Ames, 5 Allen. 183. Upon these authorities, and taking into view our doctrine of preference, so different from that adopted in England, we may say that the creditors, whether joint or several, have a right, by statute, to set aside any conversion of one class of assets into the other, if it be done by partners who are insolvent, with intent to give a preference, provided bankruptcy occurs within four months. In this case, the joint creditors might have declared upon this conveyance by Johnson to Stowers as a preference; for the firm was actually insolvent, and the necessary effect of the conversion would be, if they became bankrupt, to give the separate creditors of Stowers a preference. I am aware of the strong reasons for not interfering with the rights of partners to dissolve their firm. It is not precisely that point which I am dealing with: insolvent partners have full liberty to dissolve; but if they directly or indirectly make preferences, their acts, so far as they affect creditors, can be avoided within four months. This very brief period of limitation is their safeguard. In this case, the continuing partner petitioned, within four months, in the interest of the joint creditors; and, as it turns out that the firm was actually insolvent when they dissolved, the conversion of the joint assets necessarily involved a preference, and the intent may be presumed. Both partners being in bankruptcy, there is no one against whom an action can be brought, and the point comes up for decision properly enough on the assignees' account.

It is to be regretted that the evidence is not so full as it might, perhaps, have been on the question of fraud. If Johnson committed a fraud in fact upon Stowers, the result is the same; because it is only an honest conveyance, and one that both the partners are bound by, that would bind the creditors. Ex parte Rowlandson, 1 Rose, 89. It was on this ground that the register based his opinion, and it is a sound one in law; but I have thought the fact somewhat doubtful, and have therefore gone beyond that consideration. Both classes of creditors are to share alike.