## In re DENNING.

(District Court, D. Massachusetts. March 22, 1902.)

No. 1,951.

1. BANKRUPTCY—PERSONS ENTITLED TO PROVE CLAIMS.

One partner sold out to his copartner, pending the insolvency of the firm, receiving notes in payment for his interest. Two months later the continuing partner filed a voluntary petition in bankruptcy. The assets in his hands were: (a) Proceeds of the sale of the business plant formerly owned by the firm; (b) proceeds of the collection of debts arising from the sale of goods sold to the firm; (c) proceeds of a contingent interest in real estate inherited by the bankrupt; (d) money received by the bankrupt for goods sold by him after the firm was dissolved. Certain joint creditors proved claims against the bankrupt. *Held,* that the retiring partner could not prove his notes, since to permit him to do so would permit him to compete with his own creditors.

2. SAME—PARTNERSHIP—RETIREMENT OF MEMBER—BANKRUPTCY OF CONTINUING PARTNER—DISPOSITION OF ASSETS.

In such case, the property belonging to the firm at the time of the dissolution should be applied by the trustee first to the payment of firm creditors, the separate estate of the bankrupt should be applied first to the payment of his separate debts, and any surplus in either fund should then be applied on the other, as provided in Bankr. Act, § 5f.

3. SAME.

Bankr. Act, § 5b, providing that, if one partner only is adjudged bankrupt, the partnership property shall not be administered in bankruptcy, except by consent of the other partners, has no application to such a case.

In Bankruptcy.

James H. Sisk, pro se.

Richard L. Sisk, for certain partnership creditors.

Sullivan & Dennis, for Brown.

LOWELL, District Judge. The bankrupt was formerly in partnership with one Brown, doing business under the firm name of Brown & Denning, up to August 22, 1899. On that date they were insolvent, and may be supposed to have known their financial condition. On that date Brown sold all his interest in the partnership to the bankrupt, and received from the bankrupt eight promissory notes, of $100 each, without interest, payable, respectively, in two, three, four, five, six, seven, eight, and nine months. On October 25, 1899, the bankrupt filed his voluntary petition. At that time the firm was indebted to the amount of about $1,100. The assets in the bankrupt's hands were: (a) Proceeds of the sale of the business plant formerly owned by the firm and transferred to the bankrupt as above set forth; (b) proceeds of the collection of debts arising from the sale of goods by the firm; (c) proceeds of a contingent interest in real estate inherited by the bankrupt; (d) money received for goods sold by the bankrupt after the partnership was dissolved. Brown proved the promissory notes above stated without objection. The trustee moved to expunge the claim, which motion the referee allowed, and the claim was expunged. Brown now seeks a review.

It is plain that the bankrupt's former partner cannot be allowed to prove in this case. To permit him to do so would permit him to compete with his own creditors. Under a separate commission like this, joint creditors may prove, and, at the least, they may share in the surplus of the separate estate after payment of the separate debts. There are joint creditors in this case who have proved, and, until the claims of the joint creditors are settled, Brown cannot share in the distribution of his former partner's estate. Lowell, Bankr. § 133; Amsinck v. Bean, 22 Wall. 395, 402, 22 L. Ed. 801. There is nothing in section 5g of the act to change this well-established rule.

Certain creditors of the firm seek to prove their claims against the bankrupt individually, and, together with the separate creditors, to share in the estate now in the hands of this court. If they are to be treated as joint creditors only, and if all the assets are to be treated as separate assets, they will be entitled only to come upon the surplus after payment of the separate debts. In re Wilcox (D. C.) 94 Fed. 84. In Re Johnson, Fed. Cas. No. 7,369, 2 Lowell, 129, it was decided that joint creditors could, even after bankruptcy, so assent to the bankrupt's undertaking to pay the firm debts as to make themselves separate creditors of the bankrupt, and thus to share alike with separate creditors in the separate estate. In the same case it was intimated that the conveyance of the firm assets to one partner was a fraudulent preference, which could be set aside in bankruptcy, and that thus the assets, which originally belonged to the firm, could be brought back into the estate. If both these propositions are true, there will be confusion in working them out together. Each joint creditor will have an election (1) to come with the separate creditors upon the separate estate, including that formerly joint, or (2) to have the assets marshaled, and come with the other joint creditors upon the former joint estate. It seems that a former joint creditor, who has elected to become a separate creditor of the bankrupt, assents to the conversion of the joint into separate assets, and is permitted to come upon the converted estate as a separate creditor. On the other hand, a creditor who procures the avoidance of the conversion and a marshaling of the assets comes as a joint creditor upon the property thus returned to the joint estate, and it is hard to see how accounts can be kept which treat the same property as joint property for the payment of some claims and as separate property for the payment of others. See St. Mass. 1865, c. 113; Bucklin v. Bucklin, 97 Mass. 256.

There are considerable difficulties in dealing with joint estate under a separate commission. See In re Wilcox (D. C.) 94 Fed. 84. As was there pointed out, courts of bankruptcy at one time permitted the creditors of the bankrupt, whether joint or separate, to come upon all the estate in the assignee's hands, both joint and separate, and share in it alike, unless application was made for a separation of accounts. This application had originally to be made, not to the court of bankruptcy, but to a court of equity. Some courts of bankruptcy in this country have held that the distribution of joint estate among joint creditors, and of separate estate among separate creditors, is confined to cases where the commission is joint. See 94 Fed. 105. The con-

trary was held by this court in Re Wilcox, and the principle was treated as of general application, at least under the provisions of this bankrupt act. The court has, therefore, to consider if the assets in the bankrupt's hands which came from the firm are to be treated as converted by the transaction of August 22d, or if the conversion was avoided by the adjudication October 25th.

It is somewhat difficult to construe the conversion as a preference within the terms of section 60 of the act. Under section 60 only that is a preference which enables a creditor to obtain a greater percentage of his debts than other creditors of the same class. If creditors are thus classified exclusively with regard to the priorities established by section 64, then the conversion of joint into separate estate is a preference; but it is at least doubtful if joint and separate creditors are "creditors of the same class." If they are not, then the conversion does not enable any creditor to obtain a greater percentage of his debt than any other creditor of the same class. The conversion enables creditors of the separate class to be paid in full, while depriving creditors of the joint class of any payment whatsoever. Even in England, however, the rule in Ex parte Ruffin, 6 Ves. 119, is subject to an exception where, as here, partnership and partners were insolvent at the time of the conversion. Lindl. Partn. (2d. Ed.) *338. As to the American rule, see Lowell, Bankr. § 139. Moreover, section 5g of the bankrupt act was intended, I believe, to clear up the whole matter, and to permit the court to deal with conversions of this kind so as not only to prevent preference in the technical meaning of that word, but also so as to "secure the equitable distribution of the property of the several estates." Lowell, Bankr. § 468; In re Gillette (D. C.) 104 Fed. 769; In re Shapiro (D. C.) 106 Fed. 495. That it is highly inequitable in this case to permit what was joint estate before the dissolution of the partnership to be treated as separate estate in the distribution of the bankrupt's effects is plain. To permit the joint creditors to come, alike with the separate creditors, upon the whole estate, even if admissible, seems to me to cut the knot, rather than to untie it. The trustee should be directed to keep separate accounts, the property belonging to the firm at the time of the dissolution of the partnership on August 22d should be applied first to the payment of the joint debts, and the separate estate of the bankrupt should be applied first to the payment of the separate debts. If there is any surplus in either fund, that is to be distributed as provided in section 5f. It is true that section 5h provides that, if one partner only is adjudged bankrupt, the partnership property shall not be administered in bankruptcy unless by consent of the other partners; but that provision has plainly no application to the case at bar.

The case is remanded to the referee, with instructions to proceed in accordance with this opinion.