---

## In re RICE et al.

### (District Court, E. D. Pennsylvania. October 14, 1908.)

### No. 3,000.

BANKRUPTCY (§ 351*)—PROVABLE CLAIMS—PARTNERSHIP—ADVANCES BY PARTNER.

> While the trustee of a bankrupt partner may prove a claim for advancements made by such partner to the estate in bankruptcy against the estate of the partnership, under Bankr. Act July 1, 1898, c. 541, § 5f, 30 Stat. 548 (U. S. Comp. St. 1901, p. 3424), such claim is not entitled to share with other partnership creditors in the estate, but only in the surplus, if any, remaining after their claims are paid in full.
>
> [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 563; Dec. Dig. § 351.*]

In Bankruptcy. On certificate of referee concerning claim of Joseph A. Rice.

Robert S. Siegel, for claimant.

J. Howard Reber and Maxwell H. Kratz, for objecting creditors.

J. B. McPHERSON, District Judge. The order of the learned referee, George F. Coffin, Esq., which the claimant asks the court to review, disallowed and expunged the claim for reasons that are thus stated in the report:

"On the 14th day of January, 1908, Jos. A. Rice, Frank J. Lerch, and Robert N. Weaver, individually and trading as the Lerch & Rice Company, were duly adjudged bankrupts upon a petition filed against them on the 9th day of January, 1908.

"Subsequently, to wit, on the 1st day of February, schedules were filed, both by the partnership and by the individual members thereof, which schedules disclose that the partnership and each individual member thereof were insolvent.

"On the 12th day of May, 1908, the trustee of the partnership, as well as the trustee of the individual estates, filed his account, which shows a balance in his hands for distribution among the firm creditors of $26,505.56; for distribution among the individual creditors of Jos. A. Rice of $3,183.60; for distribution among the individual creditors of Frank J. Lerch of $6,066.72; for distribution among the individual creditors of Robert N. Weaver of $4,155.59.

"Claims had been filed against the firm and individual estates aggregating more than the balances indicated herein.

"On the 15th day of February, 1908, Jos. A. Rice filed a claim against the Lerch & Rice Company for $5,210.07, the claim being based on four promissory notes, with credits, and is alleged to be for money advanced to the firm.

"On the 4th day of June, 1908, the Joel Bailey Davis Company, a creditor, filed a formal objection to the allowance of this claim, among others; the objection to the claim under consideration being as follows:

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

" 'Your petitioner objects to the claim of Jos. A. Rice, in the sum of $5,210-07, by reason of the fact that said claimant, Jos. A. Rice, was a member of the firm of the Lerch & Rice Company, and therefore, as said firm of the Lerch & Rice Company have been insolvent for a number of years, there should be credited on the indebtedness due the said Jos. A. Rice any and all moneys withdrawn by him from the firm of the Lerch & Rice Company within a period of at least two years prior to the filing of the petition in bankruptcy.'

"That on the 9th day of June, 1908, said Jos. A. Rice appeared before the referee by counsel and waived the ten days' notice to which he would be entitled, and by stipulation with counsel for the objecting creditor agreed that testimony should immediately be taken on the allowance or disallowance of his claim.

"The testimony so taken was by stipulation of counsel, then present and consenting thereto, considered to be taken for the purpose of determining the validity of the claim of Jos. A. Rice, as well as the claims of the other partners against the firm. Subsequent meetings, to wit, on June 18, 1908, and June 22, 1908, were held for the purpose of taking testimony. The testimony particularly relating to the claim of Jos. A. Rice was taken on June 22d, and is summarized as follows:

"Jos. A. Rice, the claimant, advanced between October 3, 1898, and October 23, 1905, to the firm of the Lerch & Rice Company, of which he was a copartner, $5,388.62, on which repayments were made, the balance of which advancements, together with the interest, form the amount of his present claim of $5,210.07.

"These advancements were all evidenced by notes of the firm, given at or near the respective times when the loans or advancements were made.

"There is no direct testimony as to when the insolvency of the firm began.

"Mr. Rice was unable to say whether there was a loss or profit in conducting the business of the firm in the years 1907, 1906, 1905, or 1904.

"During the five years past, namely, beginning February 1, 1903, to January 1, 1908, Mr. Rice, as a member of the firm, withdrew either in money or merchandise from the firm the sum of $9,126.24 in the following amounts, viz.:

February 1, 1903, to February 1, 1904.................... $1,940.13
  "       " 1904, "        "      " 1905....................  1,764.70
  "       " 1905, "        "      " 1906....................  1,956.06
  "       " 1906, "        "      " 1907....................  1,601.50
  "       " 1907, "  January " 1908....................  1,863.85

"The articles of copartnership were not produced, and the testimony is that there was no special or definite arrangement between them as to what amount each partner was privileged to withdraw from the firm's funds, but each partner could take as much as he desired.

"The respective interests of the partners were: Jos. A. Rice, 50 per cent.; Frank J. Lerch, 40 per cent.; Robert N. Weaver, 10 per cent.

"The referee finds the following facts:

"(1) That Jos. A. Rice, the claimant against the Lerch & Rice Company, was a member of that firm when he loaned or advanced to the partnership sums of money which, with a proper allowance of credit, now amounts to $5,210.07.

"(2) That from February 1, 1903, to January 1, 1908, said Jos. A. Rice withdrew from the firm the sum of $9,126.24.

"(3) That there is no testimony from which the insolvency of the firm can be found for the period of time specified in the objection of the Joel Bailey Davis Company, namely, from the 1st of January, 1906.

"Opinion and Discussion.

"Although not made a part of the objection filed against this claim, the fact that it is filed in the name of Jos. A. Rice, individually, would properly authorize its being stricken from the record, since it is an asset of the bankrupt's estate, and as such an asset, if of any value, by operation of law has passed to his trustee, and, if maintainable at all, of necessity should be proven by the trustee, and not by the bankrupt himself.

"The objection filed against the claim, while on its face it seems to seek the disallowance of this claim, on the theory that the moneys withdrawn for

the past two years should be credited on the claim itself, contains, however, another allegation, viz., that said Jos. A. Rice was a partner of the firm of the Lerch & Rice Company.

"As to the right of a partner to withdraw from time to time moneys from the partnership, if done by and with the consent of his copartners, there can be no longer any question.

"As is said in Sargent v. Blake (C. C. A.) 20 Am. Bankr. Rep. 116, 160 Fed. 57, at page 123 of 20 Am. Bankr. Rep., and page 63 of 160 Fed.:

" 'In the daily conduct of business, partners are necessarily and constantly applying partnership property to the payment, not only of large individual obligations, but to the payment of their petty individual debts for living expenses, and are often devoting their individual property to the promotion of the partnership business and the discharge of partnership debts.

" 'It never could have been, it never was, the intention of Congress that these transactions—these transformations of partnership into individual, and of individual into partnership, property—within four months, or within any other time preceding the commencement of bankruptcy proceedings, should either be rescinded or avoided by subsequent adjudications in bankruptcy, unless they were actually fraudulent or voidably preferential.'

"And at page 124 of 20 Am. Bankr. Rep., and page 64 of 160 Fed.:

" 'Before the partnership property is placed in custodia legis for administration, it is not held in trust for the payment of the partnership creditors in preference to the creditors of the individual partners. The partnership creditors have no lien upon it, and no independent right to its application to the payment of their claims in preference to the claims of the creditors of the individual partners. * * *'

"At page 125 of 20 Am. Bankr. Rep., and page 64 of 160 Fed.:

" 'The right of the creditors of the partnership to payment out of the partnership property in preference to the individual creditors is the mere right by subrogation or derivation to enforce this right of one of the partners after the partnership property has been placed in the custody of the law.'

"There is no evidence before the referee that the withdrawals made by this claimant were made with a fraudulent or preferential intent. The amounts withdrawn, beginning with the year 1903, seem to be approximately the same amount, viz., $20 per week in cash and sundry merchandise.

"If this were the sole objection to the claim, the claim should have been allowed; but it is judicially before the court that the claimant, at the time he made these loans to his firm, the Lerch & Rice Company, was a member of that firm, and the testimony taken on this particular objection discloses that he was a member of the firm and to the extent of 50 per cent. thereof.

"The objection filed by the Joel Bailey Davis Company does not specifically raise this point as an objection to the allowance of the claim, but does set forth the fact, and as a part of its objection, that the claim filed was based upon money loaned by the claimant to a partnership of which he was a member.

"In the opinion of the referee, this is a fatal objection to the allowance of the claim.

"The facts in this case are very like the facts in the case of Wallerstein v. Ervin, 7 Am. Bankr. Rep., at page 256, 112 Fed., at page 124, 50 C. C. A. 129, in which the United States Court of Appeals for the Third Circuit says:

" 'The moneys advanced in excess of the amount agreed to be contributed were, it is true, in many, if not in all, instances called "loans," and the merchandise supplied was no doubt regarded by the parties themselves as having been "sold"; and it may well be conceded that upon any accounting between the parties the appellant would, after satisfaction of the firm debts, be entitled to priority of credit for its surplus advances of either kind. Yet as the proof proposed would, if allowed, have reduced the fund to which the general creditors of the firm were constrained to look for the partial payment of their claims, the law imperatively required its rejection. Whatever may have been the understanding of the partners, or their respective rights, inter se, there can be no doubt that, in fact and in law, not only the $15,000 agreed to be contributed, but also the additional money advanced and the goods supplied, were, as to creditors, embarked in the business of the firm. They augmented its capital

and enhanced its credit, and therefore could not in any manner be exempted from liability from its debts.'

"The facts appear in Re Ervin (D. C.) 109 Fed. 135.

"To the same effect is the case of Rush v. Lake, 10 Am. Bankr. Rep. 455, 122 Fed. 561, 58 C. C. A. 447; the only difference being that in the case of Rush v. Lake there was a question of fact as to whether the claimant was a partner or not, and upon the finding that he was a partner the claim against the partnership fund was rejected.

"The proposition is stated in Re Denning (D. C.) 8 Am. Bankr. Rep. 133, 114 Fed. 219, at page 134 of 8 Am. Bankr. Rep., and page 220 of 114 Fed., as follows:

" 'It is plain that the bankrupt's former partner cannot be allowed to prove in this case. To permit him to do so would permit him to compete with his own creditors. Under a separate commission like this, joint creditors may prove, and at the least they may share in the surplus of the separate estate after payment of the separate debts. There are joint creditors in this case, who have proved, and, until claims of the joint creditors are settled, Brown cannot share in the distribution of his former partner's estate.'

"The claimant loses nothing by the disallowance of his claim, because he individually is not entitled to participate until all the firm creditors and all his individual creditors are paid in full. His individual creditors lose nothing, because ample provision is made in the act itself for just such a contingency.

"Section 5f, Bankr. Act July 1, 1898, c. 541, 30 Stat. 548 (U. S. Comp. St. 1901, p. 3424), provides 'that the net proceeds of the partnership property shall be appropriated to the payment of the partnership debts, and the net proceeds of the individual estate of each partner to the payment of his individual debts. Should any surplus remain of the property of any partner after paying his individual debts, such surplus shall be added to the partnership assets and be applied to the payment of the partnership debts. Should any surplus of the partnership property remain after paying the partnership debts, such surplus shall be added to the assets of the individual partners in the proportion of their respective interests in the partnership.'

"It is hard to conceive how the proposition could be more clearly stated than the act itself states it. If, after the payment of the firm obligations, there is any fund remaining, the individual estate of Jos. A. Rice 'is entitled to 50 per cent. of such surplus and the creditors proving against his individual estate shall receive the benefit of the same. Some argument was made that section 5g controlled the allowance or disallowance of the claim in question.

"This section has been construed in Re Henderson (D. C.) 16 Am. Bankr. Rep. 91, at page 94, 142 Fed., at page 590:

" 'That partnership assets shall pay partnership debts, individual assets individual debts, and only surpluses shall be applied the one to the other; * * * nor can I read paragraph "g" as giving any excuse for the establishment of such exception by judicial construction.

" 'Clause "f" states the precepts of the law. Clause "g" relates to the procedure under it. The law in "f" demands that "the net proceeds shall be appropriated" as directed by it, while "g" provides simply that in carrying out these precepts, and as an aid in doing so, the court may do certain things, to wit, permit proof of claims of partnership estates against individual estates and vice versa, and marshal the assets of such estates so as to prevent preferences and secure equitable distribution of such estates. Note the use in this paragraph of the word "estate," instead of the word "debt," as used elsewhere. It is properly used, and was designated to meet such cases, as, for example, where the partnership estate might have a just claim against one of its individual members, who had not paid into the partnership his full share, or any part, of the capital which he was legally bound to do, while the other members of the partnership perhaps had done so, or, vice versa, where the individual member, a bankrupt, had paid into the partnership fund all of his pledged capital, while the other members had not. To meet such and other similar cases that might arise, I am convinced was the sole cause and scope of this permissive clause in procedure, only mandatory in cases where the circumstances in equity and good conscience required its application.'

"In the present proceeding there is no allegation or proof that the members composing the partnership did not pay in their original agreed contribution to the partnership fund, and therefore, in the opinion of the referee, section 5g does not apply."

The referee's decision is attacked on the ground that the claim of Joseph A. Rice against the firm is an asset of his individual estate, which belongs to his individual creditors, and should not be withheld from them, and thus applied in effect to the claims of other partnership creditors than himself. But this argument fails to state the situation precisely. No doubt the claim of Joseph A. Rice against the firm of which he was a member is an asset of his individual estate; but it is an asset with a particular disability, and in this respect it differs from the claims of other partnership creditors. Its disability consists in the fact that, according to the well-settled rule governing the marshaling of partnership and of individual assets, it cannot participate in the distribution of the partnership assets until other partnership creditors have been satisfied in full. For this reason the individual creditors of the claimant cannot profit by it as completely as if he were an ordinary creditor of the firm, and not a member also. But nothing is taken away from the individual creditors to which they are equitably entitled, because the claimant himself could not share in the distribution of the partnership assets pari passu with other partnership creditors. To sustain the claimant's position would give to his individual creditors a more extensive right against the bankrupt firm than he himself possesses, and would thus do violence to the rule that the individual creditors succeed only to such equity in the firm assets as belongs to their debtor himself. See 22 Am. & Eng. Ency. (2d Ed.) 195, note 8.

In strictness, however, the referee's order is formally incorrect. He "disallowed and expunged" the claim; whereas, if the evidence in its support was sufficient, he should have allowed it, but with the express qualification that it could not be permitted to share in the distribution of the partnership assets until such other partnership creditors as were not members of the firm also had been paid in full. Practically the form of the order does no harm, since the partnership fund is not large enough to pay such other partnership creditors in full; but if there be a contingency that sufficient partnership assets may exist, and may be realized upon, to pay the remainder of the claims belonging to those creditors and leave a surplus for the claims belonging to the individual partners themselves, it may be worth while to have the claim under consideration in a condition to share in the surplus. If, therefore, it is desired that the claim should be formally allowed, but with the qualification just stated, and if a motion to that effect be filed within five days, the proper order will be made. In default of such motion, the clerk is directed to make an entry affirming the order of the referee.