## In re TELFER.

## In re UNION BANK, WHITNEY, GILKEY & CO.

### (Circuit Court of Appeals, Sixth Circuit.    December 1, 1910.)

#### Nos. 2,041, 2,042.

1. BANKRUPTCY (§ 351*)—DISTRIBUTION OF ESTATE—PARTNERSHIP AND IN-
   DIVIDUAL ESTATES AND CREDITORS—"PERSON."
   Neither the judicial recognition by the courts of a state of the part-
   nership entity, nor the provisions of the bankruptcy act, which define a
   partnership to be a "person" within the meaning of the act, and authorize
   it to be adjudged a bankrupt (Bankr. Act July 1, 1898, c. 541, §§ 1a (19),
   5a, 30 Stat. 544, 547 [U. S. Comp. St. 1901, pp. 3418, 3424]), work a
   change of the established rule fixing the substantive rights of creditors,
   respectively, of the partnership and of its individual members.

   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 351.*

   For other definitions, see Words and Phrases, vol. 6, pp. 5322-5335;
   vol. 8, p. 7752.]

2. BANKRUPTCY (§ 351*)—DISTRIBUTION OF ESTATE — PARTNERSHIP AND IN-
   DIVIDUAL ESTATES AND CREDITORS.
   Bankr. Act July 1, 1898, c. 541, § 5g, 30 Stat. 548 (U. S. Comp. St. 1901,
   p. 3424), which provides that "the court may permit the proof of the
   claim of the partnership estate against the individual estates and vice
   versa, and may marshal the assets of the partnership estate and the in-
   dividual estates so as to prevent preferences and secure the equitable
   distribution of the property of the several estates," does not change the
   established equity rule of distribution between partnership and individ-
   ual creditors, which is expressly recognized in subdivision "f"; and,
   while the trustee of a partnership estate may prove a claim against the
   individual estate of a partner, such claim is not entitled to payment pro
   rata with those of individual creditors, but only from the surplus, if
   any, remaining after the individual claims have been paid.

   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 351.*]

Petition for Revision of Proceedings of the District Court of the
United States for the Western District of Michigan.

In the matter of Union Bank, Whitney, Gilkey & Co., a copartner-
ship, Wallace W. Dewey, Elias W. Bowman, Patrick H. Gilkey, Asa
Stratton, Rell S. Wilson, and Richard D. Whitney, individually and
as members of said copartnership, bankrupts. On petition of Robert
R. Telfer, trustee, to review an order of the District Court.    Affirmed.

Robert R. Telfer, as trustee in bankruptcy, has brought two cases into
this court upon petitions to review in matter of law an order made by the
court below in each case reversing the order of the referee.

Patrick H. Gilkey, Wallace W. Dewey, Elias W. Bowman, Rell S. Wil-
son, Richard D. Whitney, and Asa Stratton, as copartners, conducted a
banking business in Michigan under the name of Union Bank, Whitney,
Gilkey & Co. In November, 1907, the copartnership and all the partners
were adjudicated bankrupts. The Kalamazoo Trust Company was later
selected as trustee of the several bankrupt estates. Telfer, present trus-
tee, is its successor.

A claim of the Central National Bank against the estate of Gilkey was
proved and allowed in the sum of $5,000. David L. Merrill also presented
a claim against the estate of Gilkey which was finally allowed for $10,482.91.

On September 9, 1908, the trustee on behalf of the copartnership filed
proof of a claim against the estate of Gilkey for a loan of money repre-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sented by certain promissory notes signed by him with others to the amount of $95,502.13, which claim was allowed on the following day. It is agreed that: "No personal notice was given to either of the petitioners of the proof and allowance of this claim." The claims allowed against Gilkey's estate, excepting that of the copartnership, amounted to $33,002.61, and claims to the amount of $127,520.29 were allowed against the copartnership. Two dividends, one of 20 per cent. and another of 5 per cent., were declared on certain of the partnership claims; and also one of 14 per cent. on the separate claims against Gilkey, excepting those of the Central Bank and Merrill. The first dividend paid on claims against Gilkey's estate amounted to $15,117.62, of which $13,370.30 was paid to the estate of the bankrupt copartnership. Merrill filed a petition with the referee asking that his claim against Gilkey's estate be paid in full before the copartnership estate be paid any dividend on its claim against the Gilkey estate, and that the trustee of the copartnership be required to return to Gilkey's estate a sufficient amount of the dividends taken from it to pay this claim. The Central National Bank filed with the referee a similar petition respecting its claim. The referee entered orders denying the petitions, which orders as stated were reversed by the court below.

By the orders of the court below the petitioners were given priority in payment of their claims out of the estate of Gilkey as against the trustee of the copartnership on its claim against such estate, and the trustee was directed to pay to the petitioners their respective claims in full out of the assets of such estate or so much thereof as the property might be able to pay (taking into consideration other individual creditors whose claims had been allowed), and was further directed, if sufficient funds were not realized from the estate to pay the claims in full, to "turn back and pay over into the hands of the trustee" of Gilkey "all moneys (or other moneys instead thereof) which may have heretofore been paid by said trustee of the estate of Patrick H. Gilkey out of his individual property" either to the copartnership or to its creditors; "or so much of said money which has been paid as shall be necessary to pay in full" the claims of the petitioners, and that the assets of the bankrupt estates shall be marshaled accordingly.

Stewart & Jacobs and Dallas Bondeman, for claimant Merrill.

Stewart & Sabin, for claimant Central National Bank.

A. M. & C. H. Stearns, for trustee.

Before WARRINGTON, Circuit Judge, and COCHRAN and TAYLER, District Judges.

WARRINGTON, Circuit Judge (after stating the facts as above). At the time the partnership and each of its members were adjudged bankrupts, there were both joint and separate assets. A dividend, however, at the same rate as that paid to the ordinary individual creditors (i. e., in contradistinction to the partnership as a creditor) of one of the partners was paid out of his separate estate to the joint estate upon a claim for money loaned to him by the partnership.

The trustee maintains that this disposition of individual assets must be sustained independent of the bankruptcy act, but more especially in consequence of certain of its provisions, upon the principle that a partnership is an entity, distinct from its membership, and so is entitled to have the claim treated regardless of any partnership relations and of the old rule touching the primary rights of joint creditors in the estate of a partnership and of individual creditors in the separate estates of the partners. Unless the proposition as thus stated and strenuously urged upon us so far differentiates the present case from decisions rendered under the bankruptcy act of 1867 and under certain

state insolvency enactments, it would seem unnecessary to consider this case further. In re McLean, 16 Fed. Cas. 240 (No. 8,879) 15 N. B. R. 333; In re Lloyd, Bankrupt (D. C.) 22 Fed. 90; Re Lane, Brett & Co., Re Boynton, 2 Low. 333, Fed. Cas. No. 8,044; Somerset Potters Works v. Minot, 10 Cush. (Mass.) 592; Pott & Co. v. Schmucker, 84 Md. 535, 36 Atl. 592, 35 L. R. A. 392, 57 Am. St. Rep. 415.

To sustain the contention made irrespective of the bankruptcy act, counsel for the trustee relies mainly on Robertson v. Corsett, 39 Mich. 784; Carpenter v. Greenop, 74 Mich. 664, 42 N. W. 276, 4 L. R. A. 241, 16 Am. St. Rep. 662; Burrows v. Leech, 116 Mich. 32, 74 N. W. 296; Cross v. National Bank, 17 Kan. 340, and Walker v. Wait, 50 Vt. 668. As illustrative of the feature of those cases upon which reliance is placed, we may call attention to the first one. An issue arose concerning the right to remove certain machinery from land, which had been placed there by a partnership, but it appears that the land was held by some of the partners under title independent of that of the partnership property. Judge Cooley, after speaking of the partnership machinery as trade fixtures which could be removed, said at page 784 of 39 Mich.:

"The partnership for most legal purposes is a distinct entity—having its own property, capable of contracting separate debts, having the right to sue in equity its several members, and to be protected against their conduct to the same extent that it might be against the conduct of strangers."

In support of his insistence under the bankruptcy act, counsel points out certain language of the act, and particularly certain portions of the opinion in which a majority of the learned judges concurred in Re Bertenshaw (8th Circuit) 157 Fed. 363, 365, 85 C. C. A. 61, 63 (17 L. R. A. [N. S.] 886). The question in that case was whether an adjudication of bankruptcy against a copartnership alone draws into the administration of its estate in a court of bankruptcy the property of solvent partners who are not adjudged bankrupts. In the course of the opinion Judge Sanborn said:

"There are two conceptions of a partnership, one springing from the agreement on which it is founded, that it is an aggregation of persons associated together to share its profits and losses, owning its property, and liable for its debts. The other that it is an artificial being, a distinct entity separate in estate, in rights, and in obligations from the partners who compose it. In most of its relations to persons and things the latter conception is the more accurate."

After quoting from several of the decisions before mentioned as now relied on by the trustee and referring to one among others of the definitions found in section 1 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418])—thus (at pages 368, 371 of 157 Fed., at pages 66, 69 of 85 C. C. A. [17 L. R. A. (N. S.) 886]) "A 'partnership' is a 'person.' Section 1 (19)"—the learned judge again alludes to the present bankruptcy act and states:

"The uniform current of authority is that under this act a partnership is a distinct entity separate from the individuals who compose it. * * *"

In Mills v. J. H. Fisher & Co. (6th Circuit) 159 Fed. 897, 899, 87 C. C. A. 77, 79 (16 L. R. A. [N. S.] 656), in passing upon the effect

of the act of a member of a partnership in transferring the whole of his separate estate to satisfy a claim of a partnership creditor, the present Mr. Justice Lurton had occasion to say:

"A partnership, under the bankrupt act of 1898, is a distinct entity—a 'person.' * * * As an entity it may be adjudged to be a bankrupt, irrespective of any adjudication against the individual members."

Again, the difference in this regard between section 5 of the present bankruptcy act, on the one hand, and section 14 of the act of 1841 (Act Aug. 19, 1841, c. 9, 5 Stat. 448) and section 36 of the act of 1867 (Act March 2, 1867, c. 176, 14 Stat. 531), on the other, is enough to show that Congress intended by the present act to treat partnerships as entities distinct from their members for the purpose at least of permitting partnerships to be adjudicated bankrupts either through voluntary or involuntary proceedings. This is clearly pointed out by Judge Wallace in Re Meyer, 98 Fed. 976, 979, 39 C. C. A. 368, 370, where he said:

"These sections of the earlier acts authorized adjudication of bankruptcy of 'persons who are partners in trade' instead of 'partnerships'; and while providing for the administration of the joint and separate estates substantially like section 5, provided as section 5 does not, for granting or refusing a discharge to each partner."

But we are not satisfied that the existence of the entity as declared either by judicial decision or statutes is decisive of the present question. We have not discovered anything concerning the doctrine of partnership entity which shows that its origin or development arose out of any difficulty touching the substantive rights of the two classes of creditors under consideration. It is true that facility in the conduct of business has been achieved by those engaged in mercantile affairs through this artificial entity—(Parsons on Part. [4th Ed.] 2; 1 Bates, Part. § 170 et seq.; 1 Lindley, Part. [2 Am. Ed.] 233), and, further, that much annoyance and delay in procedure have been avoided both through judicial recognition of partnership title to joint property and legislative substitution of simple remedies for technical common-law remedies by and against partnerships. Among the citations made on behalf of the trustee and before mentioned to show judicial recognition of the theory of distinct entity will be found the much cited cases of Walker v. Wait and Carpenter v. Greenop, which afford apt illustrations both of the tendency of courts to escape the effects of common-law technicality in point of remedy concerning partnerships and of the need of legislative aid in that behalf.

It seems that in this country, except Louisiana, the earliest statement of the doctrine of partnership entity was made in 1834 (Parsons on Part. [1th Ed.] 3) by Chief Justice Hornblower in Hollingshead v. Curtis, 14 N. J. Law, 402, 409-410, when in passing upon a statutory right of attachment against property of one of several partners for a partnership debt he said:

"In the case of partnerships, the firm is the contracting party, not the individuals composing the firm. The credit is given to the firm. The partnership, the ideal person, formed by the union of interests, is the legal debtor. A partnership is considered in law as an artificial person, or being, distinct from the individuals composing it. It is treated as such at

law and in equity. Its property is first to be appropriated to the payment of its debts."

The late Justice Brewer, when a member of the Supreme Court of Kansas and speaking for that court in Cross v. National Bank, 17 Kan. 336, 340, before cited, recognized and declared the partnership entity, stating, in substance, the same as was said by Judge Cooley in Robertson v. Corsett: "The firm owns the property, holds the business, and owes the debts." And in Hubbardston Lumber Co. v. Covert, 35 Mich. 254, Judge Graves reached substantially the same conclusion in considering the question of residence of a partnership under a statute providing for the filing of partnership chattel mortgages. Without attempting to trace the development of this doctrine, it may be added that the Supreme Court, speaking through Justice Strong, recognized it, when in Forsythe v. Woods, 11 Wall. 484, 20 L. Ed. 207, he said: "The partnership is a distinct thing from the partners themselves."

Now we shall be aided as we progress by observing that the rule of primary right of joint creditors to the joint estate and of separate creditors to the separate estates has long survived the establishment of the doctrine of partnership entity. We shall derive some assistance, too, by referring briefly to the effect of legislation of a remedial character, such as authorizing a partnership to sue and be sued and judgments rendered against it to be satisfied by executions levied only upon the partnership property. In Whitman v. Keith, 18 Ohio St. 134, 145, proceedings in garnishment against a partnership by its name were considered in connection with a statute authorizing a partnership to sue and be sued. In the course of the opinion it was said by Judge Scott:

"The purpose of this statute was to give to every partnership of the kind which it describes a status in court as a person, an artificial or ideal person, it is true, but still the status of a person, who is regarded as the owner of the partnership property and rights in action, and is responsible for the partnership debts and liabilities of every kind. To render the administration more convenient and easy, this statute authorizes suits to be brought by and against this ideal person in the name which the partners have seen fit to give it, and authorizes judgments which may be rendered against it to be satisfied by executions to be levied only on the partnership property."

In Parsons on Partnership (4th Ed.) p. 4, it is, we think, correctly said in a note, after citing a number of decisions:

"In some of these cases a statute provided that the partnership might sue and be sued by its name. This statute, however, since it applied only to the remedy, could not change the nature of a partnership. If, as is everywhere decided, it is an entity in the eye of the law after such a statute, it must really have been so before the passage of the statute."

Judge Bates states in his work on Partnership:

"We have seen that in the absence of a statute partners can neither sue nor be sued in the partnership name. But in England and a number of states recent statutes have been passed authorizing actions by and against partnerships to be brought in certain cases in the firm name. This makes the firm a distinct entity as far as remedies are concerned." 2 Bates, Part. § 1059.

It may tend further to clarify the subject by considering the effect of absence of legislation touching the right of partnerships to sue or

be sued. While, as before shown, the partnership entity has long been recognized in Michigan by judicial decisions, yet the common-law rule still prevails in that state which prevents a partnership from maintaining a suit at law as payee of a promissory note executed by one or more of the partners as evidence of a loan of money. Kalamazoo Trust Co. v. Merrill, 159 Mich. 649, 653, 124 N. W. 597, 599. Now would a statute authorizing such suits to be maintained operate further than to clothe existing partnership entities with a remedial right? Would that right differ except in form from the right acknowledged so long to exist in equity? The Michigan case just cited was a suit at law brought by the present trustee's predecessor against Merrill, one of the petitioners herein, upon most of the notes which are the basis of the dividends paid and now in controversy. The trustee was denied the right to maintain his action at law as against Merrill, who it was said was jointly liable on the notes with Gilkey, the partner whose individual estate is under consideration. The court said:

" * * * We think it may be said to be settled law in this state that a copartnership may not maintain a suit at law against one of its partners, and the reason for the rule is that, inasmuch as all the partners have a joint interest in the claim, all are necessary parties plaintiff, and to permit the action would present the anomaly of a single individual acting as both plaintiff and defendant in the same suit. And it is elementary that in suits at law, by or against a copartnership, all the partners must be named as plaintiffs or defendants, as the case may be. As to both these propositions, the authorities (where, as in this state, the common law obtains) are practically unanimous."

But it was expressly held that a suit in equity could be maintained by the trustee; the court finally saying upon this subject (at page 657 of 159 Mich., at page 600 of 124 N. W.):

"In a suit in equity the assets in the hands of this plaintiff, belonging to the individual assets of defendant's co-obligors, will be marshaled in accordance with familiar rules."

It has not been suggested that the court's reference to marshaling "in accordance with familiar rules" was made with any idea that those rules would be changed or in any wise affected by reason of the rule prevailing in that state respecting the partnership entity.

There has always been a steady refusal in England to adopt the idea of the old Roman lawyers (Goudsmit's Rom. Law [Gould Ed.] 74) upon the subject of partnership entity, although the doctrine is recognized in Scotland. Lord Lindley in his work on Partnership, written in 1877, stated the commercial view of a firm in England to be that of a "body distinct from the members composing it, and having rights and obligations distinct from those of its members," though he further stated:

"But this is not the legal notion of a firm. The firm is not recognized by lawyers as distinct from the members composing it." 1 Lindley, Part. marg. pp. 110, 111.

Sir Frederick Pollock makes substantially the same statement in the recent edition of his Digest of the Law of Partnership (9th Ed.) p. 23; and it is worthy of observation that in his first edition (page 121) when considering provisions expressly authorizing copartners to "sue

or be. sued in the name of their respective firms" he was of opinion that the substantive results were the same as under the former practice. What he said in that regard does not appear in the ninth edition, but it is there stated (page 159) that while it was thought in view of section 40 of the bankruptcy act of 1883 the joint creditors would not be permitted longer to prove against a partner's separate estate in cases where there was no joint estate—a feature characterized by him as "a most capricious exception to the general rule"—yet that it had been held by Justice Chitty in Re Budgett (1894), 2 Ch. 555, 557 (criticised in Re Wilcox [D. C.] 94 Fed. 100), that as the law in that behalf was settled by a long course of authority, "the court could not treat it as·altered by mere negative implication, and that accordingly it is still in force."

We are thus brought to believe that neither the judicial recognition of the partnership entity, nor the provisions of the bankruptcy act which define a partnership to be a "person" within the meaning of the act and authorize it to be adjudged a bankrupt, can be rightfully said to work a change of the established rule fixing the substantive rights of creditors respectively of the partnership and of its individual members. But it is contended finally that these statutory provisions, together with section 5g of the act, have wrought a change in the substantive law, in the sense that the trustee of a bankrupt partnership is entitled not only to prove a claim of the partnership against the individual estate of one of the bankrupt partners, but also to share therein pari passu with the individual creditors. Section 5g provides:

"The court may permit the proof of the claim of the partnership estate against the individual estates, and vice versa, and may marshal the assets of the partnership estate and individual estates, so as to prevent preferences, and secure the equitable distribution of the property of the several estates."

This would seem to provide for action of the court before proof of the character mentioned could be made. It differs in this respect from section 57 in regard to proof of claims of ordinary unsecured creditors. When it is considered that 5g concerns partnership relations, it is not surprising that supervision of the court was so imposed. There are sufficient reasons, however, for the enactment of such a provision without giving to it the extreme effect urged in this case. It affords means of adjusting in advance all disputes touching the claims specified. Such adjustments may in many ways affect the duty imposed by the same paragraph to marshal both classes of assets so as to avoid preferences and secure equitable distribution. Obviously all this must be done before the provisions of section 5f can be finally carried out. Furthermore, prior to the date of the act a rule prevailed in this country, as also for a long period in England, permitting joint creditors to prove against the separate estates for purposes distinct from that of sharing therein pro rata with the individual creditors. Wilkins v. Davis, 2 Lowell, 511, 514, Fed. Cas. No. 17,664; In re Wilcox, supra, where the history of the rule as adopted through orders of the lord chancellors is exhaustively treated.

Judge Lowell had occasion to consider 5g in Re Denning (D. C.) 114 Fed. 219. The facts of that case furnish another illustration of

the object of 5g. There the sale by one partner to the other of his interest in the partnership assets and the subsequent use of the property by the purchasing partner resulted in conversion of joint estate into separate estate so far at least as the rights of joint creditors were concerned. The purchasing partner was adjudged a bankrupt and the selling partner proved his claim on the purchase money notes against the bankrupt purchaser. The claim, however, on motion of the trustee was expunged. In speaking of the conversion of joint estate into separate estate through the sale mentioned, and of the rights of joint creditors thereto, the learned judge said (at page 221):

"Moreover, section 5g of the bankruptcy act was intended, I believe, to clear up the whole matter, and to permit the court to deal with conversions of this kind so as not only to prevent preferences in the technical meaning of that word, but also so as to secure the equitable distribution of property of the several estates."

But 5g must be construed with reference to the rest of section 5, especially 5d, e, and f. The first two relate to keeping separate accounts and payment of expenses of administration of the joint and separate properties. Section 5f provides:

"The net proceeds of the partnership property shall be appropriated to the payment of the partnership debts, and the net proceeds of the individual estate of each partner to the payment of his individual debts. Should any surplus remain of the property of any partner after paying his individual debts, such surplus shall be added to the partnership assets and be applied to the payment of the partnership debts. Should any surplus of the partnership property remain after paying the partnership debts, such surplus shall be added to the assets of the individual partners in the proportion of their respective interests in the partnership."

It is scarcely necessary to say, indeed we understand it to be admitted, that paragraph 5f is declaratory of an established equity rule. Under the facts of the case none of the old and controverted exceptions to this rule can arise. For instance, neither the question of exception where there are no partnership assets, nor the one concerning a claim arising out of the prosecution of a distinct trade by one or more of the partners, needs to be considered here. No objection is made to the proof of the partnership claim nor to a transfer to the partnership assets of any surplus that may remain of Gilkey's individual estate after the claims of his separate creditors are satisfied. The objection is to the alleged right of the partnership through its trustee to share pro rata in that estate. Proof, but not sharing, is mentioned in 5g. To permit sharing upon proof allowed under that paragraph is to ignore most important relations attending a partnership, where as here the partnership and its members are alike insolvent and adjudged bankrupts. Neither the bankrupt partnership nor its trustee can have any possible interest in the separate estate of any of the bankrupt partners, except only for the benefit of the partnership creditors. Whatever disability then that can be predicated of the partnership creditors respecting the separate estate and creditors of one of the partners ought to attach to the bankrupt partnership estate and its trustee. Can it be that in a case like this there is anything in the bankruptcy

provisions we have been considering, which requires a court to decline to see or to consider these plain facts? It was long ago settled that the partnership creditors would not either directly or through the assignee be allowed so to deplete the separate estate of one of the partners to the prejudice of his separate creditors (Story on Part. § 391; Gow on Part. marg. pp. 317, 318; also decisions first cited in this opinion). It is not claimed that this rule of protecting separate creditors should be ignored upon any theory of fraud; for admittedly the claim in question is founded on consent, on simple contract. Hence, unless the trustee of the bankrupt partnership is to be accorded greater rights than would be given to those in whose interest alone the claim is pressed, there is nothing to warrant the removal of the separate estate in question from the ordinary category and liabilities of such estates (Story on Part. § 391, note); in short, the partnership estate should not be now any more than it would have been prior to the enactment of the present bankruptcy act allowed to claim against "the separate estate in competition with the separate creditors." Amsinck v. Bean, 22 Wall. 395, 402, 22 L. Ed. 801. We may now advert to a test that. ought to be decisive.

If the asserted rule would work in favor of the partnership estate, it ought by the same-token to work in favor of the separate estate; yet the right so to share in a partnership estate was denied in Re Rice (D. C.) 164 Fed. 509, 513. A partnership and its members were all declared bankrupts and a trustee common to all was appointed. One of the partners filed a claim against the partnership based on promissory notes alleged to have been given for money advanced to the firm. In the course of the opinion Judge McPherson said:

"No doubt the claim of Joseph A. Rice against the firm of which he was a member is an asset of his individual estate; but it is an asset with a particular disability, and in this respect it differs from the claims of other partnership creditors. Its disability consists in the fact that, according to the well-settled rule governing the marshaling of partnership and of individual assets, it cannot participate in the distribution of the partnership assets until other partnership creditors have been satisfied in full. For this reason, the individual creditors of the claimant cannot profit by it as completely as if he were an ordinary creditor of the firm, and not a member also. But nothing is taken away from the individual creditors to which they are equitably entitled, because the claimant himself could not share in the distribution of the partnership assets pari passu with other partnership creditors. To sustain the claimant's position would give to his individual creditors a more extensive right against the bankrupt firm than he himself possesses, and would thus do violence to the rule that the individual creditors succeed only to such equity in the firm assets as belongs to their debtor himself."

In re Denning (D. C.) 114 Fed. 219, 220, before cited, it does not appear that the former partner who sought to prove his claim against the bankrupt was insolvent, but it does appear that his former firm was indebted to him. Judge Lowell said:

"It is plain that the bankrupt's former partner cannot be allowed to prove in this case. To permit him to do so would permit him to compete with his own creditors. * * * There are joint creditors in this case who have proved, and, until the claims of the joint creditors are settled, Brown cannot share in the distribution of his former partner's estate. * * * There is nothing in section 5g of the act. to change this well-established rule."

See, also, In re Filmar (7th Circuit) 177 Fed. 170, 100 C. C. A. 632; In re Ervin ( D. C.) 109 Fed. 135, affirmed in Wallerstein v. Ervin (D. C.) 112 Fed. 124; In re Terens (D. C.) 175 Fed. 495.

As we understand these decisions, one principle to be deduced from them is we think that the rule of distribution prescribed by section 5f is not to be varied by anything permissible under section 5g, where the partnership and the individual members are all adjudged bankrupts and the estates of all are before the court, and as here are unaffected by preference or fraud. This is but applying the general rule laid down in Amsinck v. Bean, supra, at page 402 of 22 Wall. (22 L. Ed. 801):

"Where all the partners become bankrupt the general rule is that the separate estate of one partner shall not claim against the joint estate of the partnership in competition with the joint creditors, nor shall the joint estate claim against the separate estate in competition with the separate creditors."

See, also, Murrill v. Neil, 8 How. 414, 426, 12 L. Ed. 1135; Rodgers v. Meranda, 7 Ohio St. 180. It may be observed, further, that prior to the promulgation in 1825 of the Code of Louisiana both the doctrine of the partnership entity (Smith v. McMicken, 3 La. Ann. 319, 322) and that of allowing partnership creditors to be paid out of the partnership estate and separate creditors out of the separate estates before either class of creditors could resort to the other estate (Morgan v. His Creditors, 8 Mart. [N. S.] 599, 601, 20 Am. Dec. 262) prevailed; the court in alluding to the latter rule in Morgan v. His Creditors saying:

"This principle, first acknowledged by the Roman law was adopted by the jurisprudence of Spain, and makes a part of that of England and that of the United States."

We conclude that the substantive rights, as distinguished from the remedial rights, respecting bankrupt partnerships and their creditors upon the present issue and facts, remain unchanged; and so we regard the cases first alluded to and cited in this opinion as apposite and as an additional answer to the trustee's contention in the present case.

The charges of laches made against the petitioners are not sustained by the evidence. As to the claim made that there are not sufficient partnership assets remaining to repay the portion erroneously taken from Gilkey's separate estate, the evidence is not satisfactory touching the amount of partnership assets that may be collected. It is not apparent that any question of individual liability of the trustee will ever arise and hence we see no reason for considering revision of the orders in that respect.

The order of the court below reversing that of the referee is in each case affirmed, with costs.