FT. PITT COAL & COKE CO. v. DISER et al.

(Circuit Court of Appeals, Sixth Circuit. February 6, 1917.)

No. 2889.

1. BANKRUPTCY ⟪219—PARTNERSHIP—EFFECT OF ADJUDICATION.

The adjudication in bankruptcy of a partnership on a ground involving its insolvency, includes a determination that the applicable portions of the separate estates of the partners, as well as the partnership estate, are in the proceeding to be subject to the payment of the partnership debts, regardless of whether all or any of the partners themselves are adjudged bankrupt, so that it is within the jurisdiction of the court of bankruptcy to pass on the acts of individual partners in promising to pay and in securing on their individual properties a partnership debt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 356; Dec. Dig. ⟪219.]

2. BANKRUPTCY ⟪165(2)—PARTNERSHIP—PREFERENCES—ACTS OF PARTNERS.

For insolvent partners of an insolvent firm, within four months of petition in bankruptcy against the firm, to secure a firm creditor on their separate estates, under the guise of treating him as their private creditor, is a preference; it involving the wrongful use of assets equitably belonging to all the joint creditors.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ⟪165(2).]

3. BANKRUPTCY ⟪219—PARTNERSHIP—MARSHALING ASSETS.

The court, in proceedings in which a partnership alone is adjudged bankrupt, may, even if acts of partners in securing a firm creditor on their individual properties do not amount to technical preferences, set them aside under its power, given by Bankr. Act July 1, 1898, c. 541, § 5g, 30 Stat. 547 (Comp. St. 1913, § 9589), to marshal the assets of the partnership estate and the individual estate, so as to prevent preferences and secure the equitable distribution of the property of the several estates.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 356; Dec. Dig. ⟪219.]

⟪For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; John H. Clarke, Judge.

Petition by Oscar Diser, trustee in bankruptcy, against the Ft. .Pitt Coal & Coke Company and others. From an adverse decree, the named company appeals. Affirmed.

G. T. Ohl, of Youngstown, Ohio, for appellant.

J. W. Ford, of Youngstown, Ohio, for appellees.

Before WARRINGTON and DENISON, Circuit Judges, and HOLLISTER, District Judge.

WARRINGTON, Circuit Judge. John L. Greer, William G. Greer, and Robert C. Greer were partners and dealing in coal at Youngstown, Ohio, under the firm name of Greer Bros., when (on February 26, 1915) the involuntary petition in bankruptcy was filed which gave rise to the present controversy. The petition alleged that "Greer Bros." were "insolvent, and that within four months next preceding" they had committed certain acts of bankruptcy, among which was an unlawful preference made in favor of the Ft. Pitt Coal Company of Pittsburgh, and the prayer was that "Greer Bros. may be adjudged * * * to be bankrupt." In March following, John L. Greer, William G. Greer, and Robert C. Greer were "declared and adjudged bankrupts as a partnership." Whether the form of the petition and that of the adjudication were regarded by the trial judge, the present Mr. Justice Clarke, as involving both the partnership and the individuals composing it, in the sense that all were alike adjudged bankrupt, is not certain; but it is clear that the court exercised jurisdiction over the property both of the partnership and the individual partners, and that this was done without objection on the part of either the partnership or any of its members. However, one of the firm creditors, the Ft. Pitt Company, to whom both the referee and the trial judge found. that unlawful preferences had been given, reserved exceptions to such findings, and particularly to the portions which concerned transactions had between that company and two members of the partnership. The important question for decision here grows out of the transactions last mentioned.

The bankrupt partnership was indebted to the Ft. Pitt Company in the sum of $4,373.30. In December, 1914, the company placed its claim in the hands of an attorney for collection, and on the 31st of the month the matter was adjusted by giving to the Ft. Pitt Company two cognovit notes and certain security. One of the notes was for $4,000, signed by Greer Bros. and two members of the firm, viz., John L. Greer and Robert C. Greer, and secured by a mortgage of that date on the real estate of Robert C. Greer; and this note was further secured by a chattel mortgage of the same date on the personal property of the firm and the personal property of John L. Greer, but this instrument was not filed according as the Ohio statute required; the filing was delayed until February 6, 1915. The other cognovit note was signed by Greer Bros., John L. Greer, and Robert C. Greer, and

was for $373.30. Judgment was taken on this note, February 28, 1915, against "J. L. Greer and Robert Greer, partners trading as Greer Bros., and individually."

The trustee in bankruptcy, Oscar Diser, was appointed April 10, 1915, and petitions were filed later by him, asking sales of the personal property of both the partnership and John L. Greer and the real property of Robert C. Greer, and praying, among other things, that the Ft. Pitt Company be required to appear and set up by answer such interest as it claimed to have in this personal and real property. The Ft. Pitt Company, through separate answers and cross-petitions, alleged its claims in respect of both classes of property, and prayed for orders finding the validity, extent, and priority of its liens under the judgment, the chattel mortgage, and the real estate mortgage, and directing sale of the personal property clear of incumbrances and transfer of its lien to the sales proceeds, but objected to any order of sale of the real estate, and, on the contrary, asked that the application for such sale be dismissed. The trustee filed an answer to the cross-petition of the Ft. Pitt Company as to the real estate of Robert C. Greer, denying that the company obtained a lien thereon through the note and mortgage before mentioned, and alleging that such note and mortgage amounted to a preference.

Evidence was received under the issues so presented, and findings and orders were made in substance as follows: (a) That the note for $4,000, and the chattel mortgage covering the personalty of the partnership and of John L. Greer, each constituted a preference against partnership creditors in favor of the Ft. Pitt Company; all the personal property was sold, according to order, and the proceeds derived from the sale of the firm's portion were ordered to be distributed, but the proceeds arising from the sale of John L. Greer's portion were retained subject to further order. (b) That the judgment on the note for $373.30 and the mortgage on Robert C. Greer's realty each also constituted a preference against the partnership creditors in favor of the Ft. Pitt Company; orders were entered directing the realty to be sold and the proceeds, after satisfaction of liens found in favor of persons other than the Ft. Pitt Company, to be distributed among the general creditors. The Ft. Pitt Company appeals. The company has also sought to have the proceedings revised in matter of law, but the appeal was its true remedy, and hence the petition to revise will be dismissed.

[1] We see no reason to disturb the findings as made by the referee and the trial judge. The only questions requiring consideration are whether the findings and orders made in respect of the acts of John L. Greer and Robert C. Greer in promising to pay a partnership debt and in securing it were within the jurisdiction of the court, and, if so, whether the transactions effected preferences against the partnership creditors. As to the question of jurisdiction, if it could safely be said that the members composing the partnership, as well as the partnership itself, were each adjudged bankrupt, the court's jurisdiction could not be questioned. We prefer, however, to assume that the bankruptcy proceeding and the adjudication were aimed at the partnership alone; for upon this hypothesis, as well as upon the other, we think the jurisdiction of the court reached the property of the individual mem-

bers. This is because of the necessity in this instance to resort to the property of the individual members of the partnership in order to wind up its affairs; indeed, one of the essential facts alleged in the petition and necessarily found by the adjudication was the insolvency of the partnership, and the conclusive inference is that the partners themselves were insolvent, since insolvency of a partnership is impossible while its members are able to pay its debts. It is to be added that the copartners here made no objection; indeed, they in effect assented to the orders of the court, entered upon the petition of the trustee, directing sales of the individual property.

It is settled that where a partnership is declared bankrupt on a ground involving its insolvency, although one or more, but not all, of the individual members are declared bankrupt, the effect of the adjudication is to draw to the jurisdiction and administration of the bankruptcy court the separate estates of all the partners as well as the partnership estate. This was so decided in Francis v. McNeal, 186 Fed. 481, 485, 108 C. C. A. 459 (C. C. A. 3), affirmed in 228 U. S. 695, 701, 33 Sup. Ct. 701, 702, 57 L. Ed. 1029, L. R. A. 1915E, 706, Mr. Justice Holmes saying:

"On the other hand, it would be an anomaly to allow proceedings in bankruptcy against joint debtors, from some of whom, at any time before, pending, or after the proceeding, the debt could be collected in full. If such proceedings were allowed, it would be a further anomaly not to distribute all the partnership assets. Yet the individual estate, after paying private debts, is part of those assets so far as needed. Section 5f. Finally, it would be a third incongruity to grant a discharge in such a case from the debt considered as joint, but to leave the same persons liable for it considered as several. We say the same persons, for, however much the difference between firm and member under the statute be dwelt upon, the firm remains at common law a group of men, and will be dealt with as such in the ordinary courts for use in which the discharge is granted. If, as in the present case, the partnership and individual estates together are not enough to pay the partnership debts, the rational thing to do, and one certainly not forbidden by the act, is to administer both in bankruptcy. If such a case is within section 5h, it is enough that Francis never has objected to the firm property being administered by the trustee."

The same rule was laid down in Dickas v. Barnes (1905) 140 Fed. 849, 851, 72 C. C. A. 261, 263, 5 L. R. A. (N. S.) 654 (C. C. A. 6), where Judge Severens said:

"One who combines with others in a partnership enterprise becomes bound for the payment of the partnership debts. As partner he shares the fortunes of the partnership. In certain circumstances it may become subject to the exercise of the powers of a court of bankruptcy, where its resources will be gathered in to satisfy the claims of creditors. One of those resources is the liability of the partner, for which his individual property stands charged. It is true that by virtue of the rule in equity, as well as in bankruptcy, for the marshaling and distribution of assets, his individual property is first applicable to the payment of his private debts, if there be any. The surplus then becomes assets for the payment of the partnership creditors." [1]

---

[1] Of course, such decisions as these concern the effect of the present Bankruptcy Act, which treats a partnership as a distinct entity, and so gives rise to the question how the court adjudicating a firm bankrupt, but not its individual members, may reach the property of the nonbankrupt partners. The decision in Dickas v. Barnes was criticized by Prof. Brannan in June, 1907 (20 Harvard Law Review, 589). It was, however, held, in harmony with the

Again, in Armstrong v. Fisher, 224 Fed. 97, 99, 139 C. C. A. 653, 655 (C. C. A. 8), Judge Sanborn said:

"The second objection raises this question: May a court of bankruptcy which has adjudged a partnership, composed of two members, and one of its members, bankrupt, draw to itself and administer the property of the other member, and require him to file a list of his individual creditors and a schedule of his assets? There was a time when this question was debatable. * * * But it is so no longer. The Supreme Court of the United States has decided that the provision of section 5h of the Bankruptcy Law, * * * that 'in the event of one or more, but not all, of the members of a partnership being adjudged bankrupt, the partnership property shall not be administered in bankruptcy, unless by consent of the partner or partners not adjudged bankrupt,' which counsel for the petitioner invoke, is inapplicable to a case of this character, is limited in its effect to those cases in which one or more, but not all, of the partners have been, and the partnership has not been, adjudged bankrupt, and that, even if such a case as that in hand were governed by section 5h, the failure of the petitioner to object to the administration of the partnership property in bankruptcy and himself to settle the partnership business, would estop him from successfully claiming that his individual estate could not be drawn into and administered by the bankruptcy court. Francis v. McNeal, 228 U. S. 695, 700, 701 [33 Sup. Ct. 701, 57 L. Ed. 1029, L. R. A. 1915E, 706]."

The rule was also applied in Menke v. Sunderman, 186 Fed. 486, 108 C. C. A. 464 (C. C. A. 3); In re Stokes, 106 Fed. 312 (D. C.), by present Circuit Judge McPherson; In re Lattimer, 174 Fed. 824, 826 (D. C.); In re Hansley & Adams, 228 Fed. 564, 566 (D. C.). To the same effect is In re Meyer, 98 Fed. 976, 979, 39 C. C. A. 368 (C. C. A. 2), approved in Vaccaro v. Security Bank, 103 Fed. 436, 442, 43 C. C. A. 279 (C. C. A. 6), which in turn is approved in Francis v. McNeal, supra, 228 U. S. at 702, 33 Sup. Ct. 701, 57 L. Ed. 1029, L. R. A. 1915E, 706.

The logic of the foregoing decisions is that the adjudication in bankruptcy of a partnership on a ground involving its insolvency, includes a determination that the applicable portions of the separate estates of the partners, as well as the partnership estate, are in that proceeding to be subjected to the payment of the partnership debts, regardless of whether all or any of the partners themselves are adjudged bankrupt. It was therefore well within the jurisdiction of the court below to pass upon the acts of John L. Greer and Robert C. Greer in promising to pay and in securing a partnership debt.

[2] We come next to the question whether the acts of these two partners effected preferences against the partnership creditors. It is objected that their acts could not amount to preferences; for (a) the partners have not been adjudged bankrupt, and (b) their acts at most had the effect of making the Ft. Pitt Company the individual creditor of each of these partners, in addition to its existing rights as a creditor of the partnership. The argument made in support of the first of these grounds is that under section 60 preferences can be predicated only of the acts of persons who have subsequently been declared bankrupt, and therefore that the acts of these partners cannot be regarded

principle of that decision, in Re Telfer, 184 Fed. 224, 106 C. C. A. 366 (C. C. A. 6), that the bankruptcy provisions recognizing the partnership entity were designed to be remedial, rather than to change the substantive rights of either bankrupt partnerships or their creditors.

as preferences; and for a like reason it is said that the judgment obtained by the Ft. Pitt Company against these partners individually cannot be treated as falling within section 67f, since that section relates only to judgments obtained against a person who is "adjudged a bankrupt." It is urged in support of the second of these grounds that, in view of the partnership entity, as recognized by the Bankruptcy Act, the portions of the separate estates of these two partners not needed to pay their private debts were not chargeable with the partnership debts until the partnership estate should be exhausted, and hence that it was open to the partners each to make the Ft. Pitt Company his private creditor and so charge his whole separate estate with the payment of the company's claim and in priority to the partnership creditors. While both of these grounds may seem at first blush to be technically correct, yet in a case like this they are devoid of merit. In the first place, they yield no recognition to the principle that at the time the acts in question were committed, the partners were liable in solido for the debts of the partnership. It was found below by the referee and the trial judge, and the findings are undoubtedly correct, that on the date of these acts (and they occurred within four months before the filing of the petition) the partners were both insolvent; indeed, the most that is claimed in this respect is that the partners would have been solvent but for their liability upon the firm debts. Hence, if the judgment and the two mortgages were permitted to stand, they would operate to transfer not only the portions of the separate property of these members which must first be devoted to the payment of their private debts, but also the portions which are subject to the debts of the partnership. After referring to the entity of a firm as distinct from its members, Mr. Justice Holmes said, in Francis v. McNeal, supra, 228 U. S. at page 699, 33 Sup. Ct. at page 702, 57 L. Ed. 1029, L. R. A. 1915E, 706:

"But the fact remains as true as ever that partnership debts are debts of the members of the firm, and that the individual liability of the members is not collateral like that of a surety, but primary and direct, whatever priorities there may be in the marshaling of assets. The nature of the liability is determined by the common law, not by the possible intervention of the Bankruptcy Act."

In the next place, upon facts almost identical with those attending the acts of John L. Greer and Robert C. Greer, it was held in Mills v. J. H. Fisher & Co., 159 Fed. 897, 901, 87 C. C. A. 77, 81, 16 L. R. A. (N. S.) 656 (C. C. A. 6), that such acts constitute acts of bankruptcy, because they operate to transfer partnership assets to one partnership creditor against the interests of the other creditors of the same class, and so effect preferences against the partnership creditors. True, such preferential acts are performed in the names of the partners, yet their operation and effect are in substantial measure to transfer assets equitably belonging to the partnership creditors to the favored creditor of that class. The late Mr. Justice Lurton said in the Mills Case:

"Upon the facts stated in this petition it is obvious that when one member of a firm, which is insolvent and without assets, applies his whole separate estate in satisfaction of one joint liability, that creditor will receive a greater

percentage of his debt than other creditors of the same class. This, at last, is the supreme test of a preference."

The inevitable effect of this ruling is completely to answer the insistence that the partners might through the same acts favor a single creditor of the firm by making him also an individual creditor of themselves, since such acts cannot simply under another name or purpose escape the vice of creating preferences; for the transactions, however characterized, necessarily involve the wrongful use of assets equitably belonging to all the joint creditors. Surely insolvent partners of an insolvent partnership cannot rightfully devote the whole of their separate estates to the benefit of a single firm creditor under the guise of treating him as their private creditor, and so ignore their joint and several liability to all the firm creditors.

[3] Further, if we were in error in treating the acts of these two partners as preferences and as a wrongful appropriation of assets equitably belonging to the partnership creditors to the use of a single creditor of that class, it cannot escape attention that the practical effect of the acts of these partners is the same as it would have been had the partners, as well as the partnership, been adjudged bankrupt, in which case their acts would unquestionably have been open to a charge of technical preference; and in view of the facts already shown that the adjudication actually made resulted in drawing these individual assets into the jurisdiction and administration of the bankruptcy court, and since in every equitable sense these acts were the equivalents of technical preferences, the court itself might well set them aside in virtue of its power under section 5g to "marshal the assets of the partnership estate and the individual estates so as to prevent preferences and secure the equitable distribution of the property of the several estates." Judge Lowell said of section 5g in Re Denning (D. C.) 114 Fed. 219, 221:

"Moreover, section 5g of the Bankruptcy Act was intended, I believe, to clear up the whole matter, and to permit the court to deal with conversions of this kind so as not only to prevent preference in the technical meaning of that word, but also so as to 'secure the equitable distribution of the property of the several estates.'"

This view of Judge Lowell is in accord with that of the late Circuit Judge Adams, who, as District Judge, decided the case of In re Jones, 100 Fed. 781. There an insolvent member of an insolvent firm caused his overdue individual note to be indorsed in the name of the firm without any new consideration moving to the firm. Judge Adams, in view of the creditor's knowledge of these conditions, held this to be a fraudulent attempt to prefer the holder of the note over other creditors by converting the individual debt of the maker into a partnership obligation, and, under the power vested in the court by section 5g to marshal the assets of the bankrupts "so as to prevent preferences and secure the equitable distribution of the property," denied the right to prove the note as a claim against the joint estate.

We may add that in our view the instant case cannot on principle be effectively distinguished from what it would have been had the partners themselves been adjudged bankrupts. It is clear that if this had

239 F.—29

happened there would have been no room for the contentions made here. What is sought to be done is opposed to the principle of equitable distribution embodied in the Bankruptcy Act; it would give exclusively to one joint creditor the entire joint assets of the insolvent partners; it would not, of course, defeat the claims of their individual creditors, but it would prevent the other joint creditors from sharing equally with the Ft. Pitt Company in the surplus of these two individual estates; and we cannot think that in the presence of an adjudication against the firm the absence of a formal proceeding against the partners is sufficient to entitle them or their favored creditor successfully to resist the rule which plainly would be applicable under an adjudication against both the firm and the partners (In re Frazer, 221 Fed. 83, 85 [D. C.] ; In re Hull, 224 Fed. 796, 799 [D. C.]), although the facts of the latter case were not regarded as sufficient to constitute a preference.

Upon all these considerations, we hold that the acts of John L. Greer and Robert C. Greer in undertaking to pay the debt of the partnership, and to secure such debt, operated to create forbidden preferences as against the general creditors of the partnership estate, and so justified the court in setting them aside; hence the decree will be affirmed.